## JUNGERMAN v. BOVEE et al.

In this case it was held that a lease, dated Dec. 1st, 1855, and running three years and nine months, with power in the lessee to remove buildings erected by him, etc., was *surrendered* and its provisions abrogated by a second lease dated Dec. 6th, 1856, containing different terms, and among them, a clause for the surrender of the premises at the expiration of the term, "reasonable use and wear thereof and damages by the elements excepted," and that under the second lease the tenant could not remove the buildings. See facts.

Where a tenant stipulates in a written lease of a lot for the surrender of the premises at the end of the term, "reasonable use and wear thereof and damages by the elements excepted," evidence of a cotemporaneous oral agreement, that the tenant should have the right, at the expiration of the term, to remove buildings erected by him on the lot, is inadmissible, because contradicting the terms of the lease—the evidence in this case not showing an independent agreement or license to remove the buildings, but simply the lessor's construction of the lease at the time of its execution.

*Query:* Whether such a cotemporaneous oral agreement could in any event ·be effectual against an assignee of the lease.

The rule that cotemporaneous parol agreements cannot be received to contradict a written contract, applies as well to agreements from which a *license* is implied, as in this case, as to any other kind of agreement.

Where a lessor sues to enjoin the lessee from taking the bricks from and destroying a brick building erected by the lessee on the lot leased—the tenant claiming the right to remove the building under the terms of the lease—and claims damages in the sum of $1,000, and the answer makes no denial of the damages, and no proof thereof is offered, and the Court, after hearing, grants the injunction but refuses a judgment for damages: *Held,* that plaintiff was entitled to recover his damages; that such form of suit is an unobjectionable mode of concluding the entire controversy.

*Held, further,* that although plaintiff makes a cross appeal from the refusal to allow his damages as claimed, yet as defendant may have been taken by surprise, this Court will remand the case for trial *de novo* upon the question of damages, with privilege of amending the pleadings so as fairly to present the issue on this point.

Defendants below and appellants here, on the main question, to wit: the injunction, required to pay costs in this Court on both appeals.

APPEAL from the Twelfth District.

Suit brought Oct. 18th, 1859, to enjoin defendants from removing a brick building erected on a lot within the Government Reserve in San Francisco.

The complaint alleges that on the sixth day of December, 1856, Edward Field leased to defendants, Bovee and Marden, a certain lot of land situated on the north-west corner of Oregon and Front streets, in San Francisco, fronting thirty feet on Front street by a uniform depth of one hundred and thirty-seven and a half feet on Oregon street, with the appurtenances, from the fifteenth day of December, 1856, for the term of two years and eleven months at the monthly rental of seventy-five dollars per month, payable on the fifteenth day of each month; that on the ninth day of December, 1856, Field conveyed by deeds his interest in a water lot, of which said leasehold premises is a part, to plaintiff, which deed was on the same day duly recorded, and that at the same time Field assigned the lease to plaintiff; that at the time of the execution of this lease, and for a long time previous thereto, there was a valuable brick building standing on said premises, attached to the soil and a part of the premises so leased by Field to Bovee and Marden, and a part of the premises so conveyed by Field to plaintiff; that Bovee and Marden ever since the assignment of the lease to plaintiff have

paid rent to him under said lease, excepting for the month ending November 15th, 1859 ; that the defendants on the seventeenth day of October, 1859, unlawfully commenced to pull down and carry away the bricks in said building and to demolish the same, and now are unlawfully pulling down and carrying away said bricks and demolishing said building ; that the building is of the value of $3,000 and will be rendered utterly valueless to plaintiff and unfit for occupation, etc., unless the defendants are restrained, etc. ; and that this plaintiff has suffered damages by reason of said unlawful acts of said defendants in pulling down and carrying away said bricks and demolishing said building, in the sum of $1,000.

The answer contains a denial of but one allegation in the complaint, to wit : the allegation that Bovee and Marden entered under the lease set out in the complaint.    The defense is that under the lease of Dec. 1st, 1855, and the agreement made at the same time, defendants have a right to remove the building ; and that the defendants consented to receive two certain new leases, to wit : one from Field to Bovee and Marden, dated Dec. 6th, 1856, and the other from Arrington to Bovee and Marden dated Dec. 8th, 1856, in order that, on the completion of the purchase by plaintiff from Field, he, plaintiff, might hold a separate lease of his divided portion of said premises, and for the purpose of facilitating the negotiations between said plaintiff and said Field, and solely for their accommodation and especially for the accommodation of the said plaintiff.

On the trial, plaintiff put in evidence the lease referred to in the complaint, dated Dec. 6th, 1856, from Field to Bovee and Marden, the assignment thereof, and the deed from Field to plaintiff, and rested.    In this lease there is a covenant on the part of the lessees that they will " on the last day of the said term, or other sooner determination of the estate hereby granted, peaceably and quietly leave, surrender and yield up all and singular the said demised premises, reasonable use and wear thereof and damages by the elements excepted," and also a covenant for quiet enjoyment.

Defendants put in evidence the Shillaber lease of the Government Reserve, being the well known lease by Capt. Keyes, on the part of the United States, in 1849, to Shillaber for ten years, with a clause giving to the lessee the right to remove any buildings erected by him on the property during the lease.

Defendants next put in evidence a lease from Field to Bovee and Marden, dated December 1st, 1855, of a lot, commencing on the north-west corner of Front and Oregon streets and running northerly sixty feet by one hundred feet deep, for three years and nine months from date, at the monthly rent of one hundred and fifty dollars; and then called Edward Bosqui as a witness, who was agent of Field, and as such made the lease, and who testified as follows : " The lot leased to Bovee and Marden was eight or ten feet under water at the time the agreement for the lease was made. The agreement for the lease was made a month or more before the lease was executed. Bovee conducted the negotiation with me. He said he wanted to put up brick buildings, and wished Field to purchase the improvements at the expiration of the term, provided he became the owner of the fee of the land. I would not agree to it. He then spoke about removing the buildings. I told him we would have no claim to the buildings, provided the rent was paid. He seemed to doubt whether he could remove the buildings. He took legal advice, and was advised he could. I consented that he might, and he satisfied himself that he had the right to remove the buildings."

That portion of this testimony going to show a verbal agreement as to removal of buildings was objected to by plaintiff, as varying the terms of the lease. Overruled, and exceptions.

The witness continued : " I had full power of attorney from Field. The lot was filled in by Bovee and Marden after the agreement for the lease, and the building now on the lot was put up by them after the lease was executed. They have been in possession ever since till last November.

The plaintiff purchased the premises on which the building in controversy stands at the State sale, and then purchased Field's unexpired term.

The second lease from Field to Bovee and Marden, dated December 6th, 1856, was made to simplify the transaction, and at the request of Jungerman. The object was to divide this thirty feet from Arrington's thirty feet north of it, so that Jungerman could receive the rent for his own lot. It was one of the conditions imposed by Jungerman in buying from Field. The only object was

to apportion to Jungerman his share of the rent under the first lease so he could go directly to Bovee and Marden for it. I applied to Bovee to do it, and explained to him the object, and he consented, executed the lease, and also another for the north thirty feet held · by Arrington.

The Arrington building was the same originally as the one on this lot. The rent of the whole sixty feet was the same under the two new leases as under the original lease."

Plaintiff made the same objection here to a verbal agreement to vary the terms of the second lease. Overruled, and exceptions.

The lease of December 1st, 1855, from Field to Bovee and Marden contained a covenant by the lessees that they would " on the last day of said term or other sooner determination of the estate hereby granted, peaceably and quietly leave, surrender and yield up unto the said party of the first part, all and singular the demised premises ; " but no covenant for quiet enjoyment.

Arrington was then sworn for defendant, and testified that he bought Field's unexpired term in the northerly thirty feet some time between the first and fifth of January, 1857 ; that negotiations had been going on for some time before ; and that the second lease to Bovee was made in view of this purchase.

Defendants then put in evidence an agreement, dated December 8th, 1856, between Field of the first part, by Bosqui his agent, and Bovee and Marden, which runs : " that whereas said party of the first part has canceled a certain lease and executed to said parties of the second part another, bearing date the sixth instant ; now in consideration of the premises," etc., Bovee and Marden agree to pay Field thirty dollars, monthly, on the fifteenth of each month, during the term of two years and nine months from the fifteenth instant, and thereafter until the expiration of said term.

The reversion or interest of the State in the lot leased by Field to defendants was sold in 1854 or 1855, under a sale made by the State Commissioners, in pursuance of statutes authorizing it. The premises were sold in two parcels ; plaintiff becoming the purchaser of that portion of the lot on the north-west corner of Front and Oregon streets, thirty feet by one hundred, and Arrington becoming the purchaser of the remainder, or the northerly half—that is, thirty feet by one hundred feet.

Defendants then put in evidence a lease, dated December 8th, 1856, from Arrington to Bovee and Marden, of a lot commencing on the west line of front street, sixty-one feet, eight inches southerly from the north-west corner of Front and Jackson, and running southerly thirty feet by one hundred and thirty-seven and one-half feet deep, for two years and nine months, from December 15th, 1856, at the monthly rent of one hundred and five dollars. The lease contained the same covenant for surrender of the premises at the end of the term and for quiet enjoyment as the lease by Field to defendants of December 6th, 1856.

This was all the evidence. The Court below gave plaintiff decree, enjoining defendants from removing the building and for costs. A motion for new trial having been overruled, defendants appeal.

*D. Lake,* for Appellants.

I. The case is on all fours with that of *Friedman* v. *Macy,* (17 Cal. 226) except that on the sixth day of December, 1856, the defendants took a new lease from the plaintiff. The plaintiff insists that this distinguishes the case from *Friedman* v. *Macy ;* that inasmuch as the building was then erected, it was the property of the plaintiff, and whatever rights the defendants had, under their original lease, to remove the buildings, were abandoned or forfeited by this last lease. We insist that their rights were in no wise affected.

The lands embraced in the original lease from Field to the defendants was for a larger quantity of land than that leased by the plaintiff, Jungerman, to the defendants. The interest of the State (being the reversion after the Government lease expired) to the lands embraced in the lease from Field, was sold in two parcels. One-half was purchased by the plaintiff, and the other half by Arrington. The plaintiff then made an arrangement to purchase of Field his unexpired term of the lands which he had thus purchased from the State—by which he would become immediately entitled to a portion of the rents reserved in the lease from Field to the defendants. But as apportioning the rents would be attended by some inconvenience, the defendants were applied to by Jungerman and Field to take two new leases in place of the old one ; one

of them for the premises purchased by Jungerman, and the other for those purchased by Arrington—the rents being the same. The whole object of the transaction was to accommodate Jungerman, by fixing the amount of the rents that he would be entitled to under the original lease. None of the parties supposed that the rights of the parties were in the least affected ; nor will a Court of Equity allow this plaintiff to use this instrument to the prejudice of the defendants in a manner so foreign to its original intent.

The right to remove the improvements, but for the last lease, is not an open question. (*Friedman* v. *Macy*, 17 Cal.)

Does this lease place defendants in any worse position ? In common honesty and equity, clearly not. Then is there any rule of law that prevents the Court from doing common justice ?

The rule invoked is, that this last lease worked a complete surrender of the former one, and consequently a surrender of the improvements ; that the term commenced at the date of the last lease, at which time by the surrender the plaintiff became the owner of the improvements. But there was no surrender in fact, and we contend there was none either in law or equity. The defendants never entered under the plaintiff. And the only effect of the new lease was to attorn to the plaintiff.

Whether the new lease worked an entire surrender of the old, together with all rights under it, depends of course on the intention of the parties, to be gathered from all the facts and circumstances attending the transaction. Or to state it more accurately, whether in equity it ought to be regarded as an entire surrender. *Van Rensselaer* v. *Penniman* (16 Wend. 569) is in point. There the tenant took a new lease on the same terms as the first one, and it was held no surrender. We ask the attention of the Court to that case, as we think it decisive of the present one on the point of surrender.

II. If we are not right in regard to the effect of the new lease, then there is still another answer to the plaintiff's case, to wit: an express license and agreement to permit the removal of the buildings.

Bosqui testifies to the agreement. The plaintiff contends that this agreement cannot be proved by parol, as it tends to contradict

the written lease.   We insist that they are separate and independent agreements, as was held in *Dubois* v. *Kelly*, (10 Barb. 496). We refer the Court to the printed argument of Mr. Haight in the case of *Friedman* v. *Macy*.

III.   There is a cross appeal by the plaintiff, because of the refusal of the Court to decree the sum claimed in the complaint for damages.

The ground of this claim is supposed to be that the defendants did not take issue on the question of the amount of damages alleged in the complaint.

1.   The case was not one where the plaintiff could recover any judgment for damages as such.   And the fact that he improperly in his prayer asked for a judgment for a certain sum, does not help him.   The prayer should have been that the Court should, in addition to the perpetual injunction, decree that the defendants should pay whatever damage they had done.

But in no case is it necessary to take issue on the question of damages.   Where the substantive matters of the action are denied, a failure to deny the amount of damages is no admission of such amount.   (*Conness* v. *Meir*, 2 E. D. Smith, 314.)

*Shattuck, Spencer & Reichert*, for Respondent.

I.   The taking of this second lease operates either as a surrender of the first or to confirm it.   And the presumption of a surrender of the first lease arises in all cases where such presumption would not do violence to common sense.   And a surrender occurs either by implication or merger, or both.   (*Van Rensselaer* v. *Penniman*, 6 Wend. 579; Taylor's Land. & Ten. secs. 512–13; Roberts on Frauds, 254, 255, 256.)

It is not only not repugnant to common sense that this first lease was surrendered by taking the second, but it is in perfect consonance with common sense, and it will admit of no other construction. The term of the Government reserve lease expired the twenty-seventh day of November, 1859.

By these second or new leases, the terms of the tenancy of Bovee and Marden were changed from those under the first, as follows: 1st, as to the Arrington lot, they had a new landlord; 2d,

24

under the new lease the terms commenced December 15th, 1856, instead of December 1st, 1855; 3d, under the new lease from Field, the term ended November 15th, 1859, instead of September 1st, 1859, as under the old lease; and under the new lease from Arrington, the term ended September 15th, 1859, instead of September 1st, 1859, as under the old; 4th, under the new leases, the aggregate rent was one hundred and eighty dollars per month, instead of one hundred and fifty, as under the old; 5th, under the new leases, the rent was payable on the fifteenth of every month, instead of on the first, as under the old; 6th, under the new leases, the lots let are one hundred and thirty-seven and a half feet deep, instead of one hundred feet deep only, as in the old, so that the new leases covered an additional lot of land thirty-seven and a half feet front on Oregon street, by sixty feet deep, not covered by the old lease; and by comparing the second lease from Field with the first, it will further appear that, 7th, in the second lease there is a covenant on the part of the lessor to keep Oregon street open, and none in the first; 8th, in the second lease, the lessees covenant " on the last day of the said term, or other sooner determination of the estate hereby granted," " peaceably and quietly to leave, surrender and yield up," " all and singular, the said premises, reasonable use and wear thereof, and damage by the elements excepted," and they make the same covenant in the Arrington lease, but there is no such covenant in the old lease; 9th, in the new lease from Field, there is a covenant by the lessor for quiet enjoyment, and none in the old; and it will be further seen by referring to the agreement between Field and Bovee and Marden, bearing date December 8th, 1856—10th, that the parties thereto expressly recite that Field " has canceled a certain lease, and executed to said parties of the second part another, bearing date the sixth instant," and in consideration thereof, and of five dollars, Bovee and Marden " agree and bind themselves that they will pay " to Field " the sum of thirty dollars monthly, on the fifteenth day of each month, during the term of two years and nine months from the fifteenth instant, and thereafter during the expiration of said term."

We apprehend from the foregoing facts that, notwithstanding

Jungerman *v.* Bovee.

Bosqui testifies " that the second lease from Field to Bovee and Marden, dated sixth December, 1856, was made to simplify the transaction," and to divide " this thirty feet from Arrington's thirty feet," the record under the hands and seals of all the parties is the best evidence of their intentions.

The purposes stated by Mr. Bosqui, and alleged in the answer, may have been one of the motives for taking the new leases, but there were other motives as shown by the leases themselves.

II.   The evidence of Bosqui is not competent to show that before, and at the execution of the lease in 1855, there was an understanding that the defendants might remove the building to be erected by them, when their term was ended.   (2 Stark. on Ev. 550, 551, note citing *Coleman* v. *Packard*, 16 Mass. 39 ; *Brigham* v. *Rogers*, 17 Id. 571 ; *Smith* v. *Williams*, 1 Car. Law. Rep. 263 ; 1 Murphy, 426 ; *Barber* v. *Brace*, 3 Conn. 9; *Atkinson* v. *Scott*, 1 Bay. 307 ; *Hamilton* v. *Wagner*, 2 Marsh. 333 ; *Clarke* v. *McWilliam*, 2 Car. Law. Rep. 68 ; *Barry* v. *Morse*, 3 N. H. 132 ; *Machir* v. *McDonald*, 4 Bibb. 473.)

III.   Under the pleadings, the plaintiff was entitled to a judgment for $1,000 damages.   (1 Cal. 393 ; 6 Id. 164 ; 10 Id. 216 ; 7 Id. 124 ; 4 Id. 291 ; 17 Id. 487.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

1. This case is not brought within the principle of *Friedman* v. *Macey*. (17 Cal. 226.) The lease in this case seems to be full and explicit in its terms, and these regulate and determine the rights of the parties.   The fact that former leases contained different terms, or gave the lessees other rights, is immaterial ; for, by the express terms of this lease, the premises are to be surrendered at the expiration of the term—" reasonable use and wear thereof, and damages by the elements excepted."   The inference from the new contract, and from the change of the terms of the old, is irresistible to show that the intent was to surrender the old lease ; indeed, effect cannot otherwise be given to the express provisions of the last contract.   See Roberts on Frauds, 254 *et seq.*, as to presumption from a new lease of the surrender of the old.

2. We think the point not well taken that the tenant had a license to remove the buildings. The written contract expressly contradicts this idea. It stipulates for the delivery of the premises, including the buildings, at the expiration of the term. This license is sought to be proved by evidence of a cotemporaneous oral agreement or understanding that the tenant should have the right to remove the buildings. Even if, as against an assignee of the lease, this agreement could, in any event, be effectual, it seems clear to us that such proof would be inadmissible under the circumstances of this case, because contravening the rule that cotemporaneous parol agreements cannot be received to contradict a written contract; and this rule applies as well to agreements of this sort, from which a license is implied, as to any other. We see nothing in the case in 10 Barbour to support the point of appellants. The evidence of Bosqui does not show an independent agreement or a license, but merely his construction of the lease; but if the lease is as we construe it, it is impossible for us to see why a right or privilege, cotemporaneously given by an oral agreement, directly contradicting the effect of the writing, could be set up against the writing.

3. We are of the opinion that the plaintiff is entitled to recover in this action his damages for the injury done by these defendants. This suit is a speedy and unobjectionable mode of concluding the entire controversy. The failure of the Court to consider this matter is assigned as error by the plaintiff below on cross appeal. The averment of damages does not seem to be denied, and no proof of the amount was made. The case is remanded that this matter may be determined. We think it better not to direct judgment, as the defendant may have been taken by surprise, but remand the case to be tried *de novo* upon this matter of damages, when the pleadings may be amended so as to present the issue fairly, if amendments be desired. The decree is in other respects affirmed. Appellants, defendants below, to pay the costs in this Court on both appeals.