THOMAS ENYEART, PLAINTIFF IN ERROR, V. JAMES A. DAVIS, DEFENDANT IN ERROR.

1. **Landlord and Tenant: SURRENDERING LEASE.** Where a lessee was in possession of a farm under a lease from the owner for a term of five years, which lease gave the lessee an option to buy the farm at any time during the term, at a specified price, and within the second year of the term he received and accepted a new lease from the owner for a term of two years, which second lease contained a clause that the lessee would, at the end of said term, quietly and peaceably yield up possession of the said premises unto the lessor in as good condition as the same were when entered upon, ordinary wear or damage by fire excepted, *Held,* A surrender of the former lease by operation of law.

2. **Trial: EVIDENCE.** The question of the admissibility of evidence on the ground of relevancy cannot be raised in a cause tried to a court without a jury.

ERROR to the district court for Washington county. Tried below before WAKELEY, J.

*Davis & Powers* and *W. J. Connell,* for plaintiff in error.

*Ballard & Walton* and *John D. Howe,* for defendant in error.

COBB, CH. J.

This is an action in the nature of an action of ejectment, brought by the defendant in error against the plaintiff in error to recover a certain tract of land. The petition is in the usual form in such case. The plaintiff in error, as defendant, filed an·answer in the nature of a cross-bill, denying the title and right of possession of the plaintiff, and alleging that he, the said defendant, was in the possession of the said land by virtue of a certain written contract and lease of said land executed to him by one H. E. Wells,

who was then the owner of said land, for the term of five
years, from and after the first day of January, 1881, at a
rental of one hundred dollars per annum; and which said
contract and agreement contained the further provision
that if at any time during said five years the said defend-
ant should see fit to purchase said premises, he should have
the right to do so, at the agreed price of twelve hundred
dollars, as follows: three hundred dollars cash, and the
remainder in notes, secured by mortgage on said land, with
interest at the rate then obtained by said Wells on other
mortgage loans; that said defendant was, and had been, in
the possession of said land ever since March first, 1881,
cultivating the same and living thereon with his family,
and making valuable and permanent improvements thereon
with a view and intention and for the purpose of making
purchase of said farm under and in pursuance of said con-
tract and agreement, and during all of said time making pay-
ment of the rent and taxes, as specified in said agreement or as
required by the said Wells; that the provision of said con-
tract, so far as the agreement of the said Wells to sell said
farm to plaintiff at any time during said term of five years
is concerned, the same remains in full force and effect, and
has never been changed, modified, or revoked; that, relying
on said contract for the sale of said land to him by said
Wells, and with a view and intention of purchasing said
farm, he made certain valuable improvements thereon
(which are therein enumerated), which was done with the
knowledge and approval of the said Wells, and at a cost
to said defendant of eight hundred dollars; that during
all the time that defendant had occupied the said farm
the plaintiff has been a near neighbor of defendant, living
within one-half mile of said farm, and a frequent visitor
thereon, and that at several times during the occupation of
said farm by said defendant the said plaintiff was fully in-
formed and well knew of the terms of said contract with
said Wells, and that at the time of pretending to purchase

said farm from said Wells the plaintiff had actual notice and full knowledge of the rights of said defendant in th e premises, and well knew that said defendant was intending to buy said farm within the time fixed by said contract; that on or about the 22d day of March, 1883, he, the said defendant, made a tender to the said Wells of three hundred dollars, lawful money of the United States, and also, on the —— day of April, 1883, he made a like tender to said plaintiff, and also proposed and offered to both said Wells and plaintiff to make and execute the proper note and mortgage to secure any balance due from said defendant necessary to cover the purchase price of said farm, and duly demanded from said Wells and from said plaintiff a deed of said land, which tender and offer defendant renewed and kept good, and that the said Wells and the said plaintiff both refused said tender, and declined to accept or consider the said offer, and absolutely and unconditionally refused to make to said defendant a deed for said farm.

Defendant further alleged that while he was occupying said farm, to-wit, on or about the 5th day of September, 1881, at the special instance and request of said Wells, he received upon said farm 240 head of sheep belonging to said Wells, to feed and care for said sheep, the said Wells agreeing that for such care, feed, etc., said defendant should receive the full and fair value of said feed, expenses, and care, which defendant gave and bestowed until March 17, 1882, the items of which said feed, care, and expense which said Wells agreed to pay, and which defendant alleges are fair and reasonable as charged, are contained in Exhibit B, attached to and made a part of said answer. And defendant further alleged that for the purpose of properly housing the said sheep it became and was necessary to build a certain barn on said farm, which, accordingly, was erected, it being agreed and understood that upon final adjustment of all matters in difference between defendant and said Wells that said Wells be allowed and credited with

the sum of six hundred dollars, the agreed price of said barn, in addition to twelve hundred dollars, the agreed price for said land.

The said defendant therefore prayed that an accounting might be had of the balance due from him in the premises, and that upon the payment of three hundred dollars cash, and executing a mortgage for the remainder, that said plaintiff and said Wells be required to convey to defendant the said land, and the improvements thereon, which· said defendant prayed might be adjudged as held in trust for him, the said defendant, and for general relief.

The plaintiff filed a reply to the said answer and crossbill of the defendant, in which he denied the several allegations therein, except as in the said reply are specifically admitted, and such as were substantially set out in the petition. He admitted that the said Wells leased said premises to the defendant for the term of years as set out in the defendant's answer, but he denied that said Wells ever agreed to sell the same to defendant as set forth in his said answer, and denied that the said Wells ever agreed to pay defendant for taking care of said sheep, or furnishing food for the same, and denies that he is indebted to said defendant therefor, and plaintiff alleged the truth to be that some time in the month of September, 1881, the defendant and one Edwin Brooks entered into a contract in substance that the defendant should take the sheep, named in defendant's answer, and keep the same five years without any expense to said Brooks, and annually the said defendant should return to the said Brooks one-half of the wool and one-half of the increase, and the original number of sheep at the end of five years, and the said defendant was to have one-half of the wool and increase thereof in full for his pay for the care and feed of said sheep. That the said defendant so negligently and carelessly cared for said sheep that they nearly all died, and by reason thereof the said defendant and the said Brooks canceled said contract,

and said Brooks took away the balance then living—about fourteen head; that said Wells never, directly or indirectly, entered into any contract concerning the care of any sheep or the feed thereof, and never furnished the defend ant any sheep, but after September, 1881, the said Wells bought a one-half interest in said sheep then held by said defendant. And the plaintiff in his said reply further alleged that some time in the month of March, 1882, the defendant and the said Wells had a final settlement of all matters between them up to that date, and the said Wells, in consideration of an amount due to said defendant from said Wells and said final settlement, and the defendant entered into a written lease of said premises to the defendant from said Wells from the month of March, 1881, to the month of March, 1883, and in said lease the said defendant agreed to yield up to said A. E. Wells, or his assigns, the possession of said premises on the first day of March, 1883, and therefore the former lease and contract between them, and all contracts in relation to the said premises, were then and there canceled and annulled, etc.

There was a trial to the court, and a finding for the plaintiff. And a motion for a new trial having been overruled, and a judgment rendered for the plaintiff, the defendant brings the cause to this court on error.

The plaintiff in error presents the following points in his petition in error:

"I.   For the reason that the finding of said court or verdict is not sustained by the evidence in the cause.

"II.   That the verdict is contrary to law.

"III.   Error of the court in refusing to submit the questions of fact in said cause to a jury as requested by the defendant on the trial of said cause.

"IV.   Error of the court in the admission of evidence introduced by the plaintiff over the objection of the defendant at the time, and excepted to by the defendant.

"V.   Error of the court in dismissing defendant's

cross-bill for specific performance of a contract set up in defendant's answer.

"VI. Error of law by the court during the progress of the trial of said cause in the admission of evidence objected to by the defendent and excepted to at the time."

The first, second and fifth errors assigned will be considered together.

It appears from the evidence as preserved in the bill of exceptions that shortly before the 8th day of January, 1881, the defendant had, upon the invitation of A. E. Wells, met him at Tekama, and driven to the farm in question, then lately purchased by Wells, and examined it with a view of leasing it for a term of years, and ultimately purchasing it from Wells. The contract then entered into between them for that purpose is evidenced by a letter written by Wells to defendant on the 8th day of January, 1881, and sent by mail to defendant, of which the following is a copy:

"OAKLAND, NEB.,<br>"Jan. 8, 1880 (sic.).

"*J. L. Enyeart:*

"DEAR SIR—I have agreed to rent you my farm near Herman, in Washington county, Neb., being the south half of the N. E. ¼ and the south half of the N. W. ¼ of sec. No. 26, in township No. 21 north, range 10 east, for the term of five years, from and after the Jan. 1, 1881, at an annual cash rent of one hundred dollars ($100), payable at the end of each year. You to pay taxes during said term, commencing with the taxes of 1881 and including the taxes of 1885. You to keep up and maintain all improvements and repairs. I also agree to sell said farm to you at any time during said term for the sum of twelve hundred dollars ($1,200), and upon payment of three hundred dollars in cash will give you a deed and take a mortgage for the balance, with the rate of interest then obtianed by me on other mortgage loans.

"A. E. WELLS.

" Witness: "

Defendant took possession of said farm under the said contract, and moved on to it, with his family, on the 9th day of March, 1881. He paid the taxes for 1882 and settled with Wells for those for 1881, in the settlement hereinafter refered to. He also made improvements on the farm, consisting of setting out shade and fruit trees, small fruits, and vines, driving a well, putting in a pump; tubing and curbing, putting lightning rod on barn, insuring barn, grading in and about barn, filling gulch and sink holes on farm, feed lot, fence posts, and hen house, which defendant, when on the stand as a witness in his own behalf, estimated to be worth in the aggregate fifteen hundred and eighty-seven dollars.

There was a vast amount of conflicting testimony in regard to a band of sheep which were kept on the said farm by the defendant, which, according to testimony, belonged to the said Wells, and that defendant kept them for hire, but as I do not see that the same could properly enter into the consideration of the issue between the parties, and in view of the conflicting testimony it must be presumed that the trial court found against the defendant in that behalf —which it was amply warranted in doing, no further reference will be made to that matter.

It appears from the evidence that while the defendant was in the possession of the farm under the said contract the said A. E. Wells built a barn thereon, to which building the said defendant contributed a considerable amount in material furnished, money paid workmen, work, hauling material, and boarding the workmen engaged in its erection.

The defendant and Wells met at the house of the former on the farm in question on the 25th day of March, 1882, and, after remaining part of the day there and looking over papers and accounts, and discussing business matters, they, together with a Mr. Cull, who was a witness at the trial, went to the office of Mr. Darrell, in the village of Herman,

where the business was renewed and completed. While the parties were together on this day, at the house of defendant, or at the office of Mr. Darrell, or partly at one place and partly at the other, there was a settlement made between them, which resulted in the execution, delivery, and receipt of a second lease of the said farm from Wells, to defendant. This lease will be referred to hereafter. But as counsel on either side seem to lay considerable stress on the said settlement, I will observe that while the testimony is altogether conflicting as to whether the said settlement was confined to the claim of defendant for the matters and things growing out of the erection of the barn, or embraced also his claims for improvements put upon said farm (excepting the pump), yet, in the view that I take of the matter, it makes little or no difference which version is true. It is true there is not much doubt as to what A. E. Wells contributed to this settlement two years' rent of the farm at one hundred dollars per year and the taxes for the year 1881. The admitted account of the defendant for matters growing out of the erection of the barn amounted to two hundred and twenty-eight dollars and eighty-three cents. Taxes must be pretty high up there, if the account of Mr. Wells, after balancing defendant's admitted barn account, had much left to apply on the improvements, and the value of his unexpired lease, and option to purchase the farm.

But however this may be, the fact is undisputed that upon the conclusion of this settlement the defendant, signed, delivered, and received, to and from said Wells, a lease *inter parties*, whereby his tenancy was restricted to two years, and wherein he agreed to deliver up the possession of said farm to the said Wells, or his assigns, at the end of such term.

The defendant in his testimony says that he did not know at the time he received and accepted the said last mentioned lease that it contained the clause for the redelivery of the possession of the premises at the termination

of the new term. But he nowhere claims that he did not knowingly and intentionally accept of the new lease or the new term.

The law is thus laid down by a standard authority: "Where a lessee for years accepts a new lease from the reversioner, he is estopped from saying that his lessor had no power to make such a lease; and as the lessor cannot grant a new lease until the prior one has been surrendered, the acceptance of the new lease necessarily implies a surrender of the former one. Such surrender is an act of law and takes place independently of the intention of the parties." Taylor's Landlord and Tenant, § 507, citing *Challoner v. Davies*, 1 Ld. Ray, 402. *Livingston v. Potts*, 16 Johns., 28. *Bailey v. Delaplaine*, 1 Sanf., 5. *Jungerman v. Bovee*, 19 Cal., 354. See also *Van Rensselaer's Heirs v. Penniman*, 6 Wend., 569. *Springstein v. Schermerhorn*, 12 Johns. R., 357, and Roberts on the Statutes of Lands, 254 *et seq.*

So, although it were proved or admitted that the clause in the new lease providing for the redelivery of the premises to the lessor at the end of the term was fraudulently inserted, I do not see that it would benefit the defendant, for, as we have seen, the same consequence would flow from the acceptance of the new lease whether it contained that clause or not.

The claim of the defendant to a specific performance is based solely upon the terms of the first or original lease. This, we have seen, was surrendered by operation of law, therefore no right depending upon it is capable of enforcement.

The second error assigned cannot avail the plaintiff in error, because it is stated, both in the record proper and in the bill of exceptions, that the cause was tried to the court without the intervention of a jury by stipulation of parties.

The fourth and sixth errors assigned are identical. " Error of the court in the admission of evidence intro-

duced by the plaintiff over the objection of the defendant at the time and excepted to by the defendant."

Greenleaf states the law that "In trials of fact without the aid of a jury the question of the admissibility of evidence, strictly speaking, can seldom be raised; since whatever be the ground of objection the evidence objected to must, of necessity, be read or heard by the judge in order to determine its character and value." 1 Greenleaf on Ev., § 49. There can be no doubt of the correctness of this rule when confined to questions of relevancy, and as my attention has been called only to this class of objections in the record it is not deemed necessary to examine the question further.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.