LEVI P. TREADWELL vs. PETER BROOKS.

The statute (Gen. Statutes, p. 355, sec. 22,) provides that "the executor or administrator of any deceased mortgagee, or any guardian or conservator whose ward is a mortgagee, may, on the payment, satisfaction or sale of the mortgage debt, release the legal title to the mortgagor or party entitled thereto." Held not necessary that the release be of the whole mortgaged property on payment of the whole debt, but that a part might be released on payment of a part of the debt.

A, owning an equity of redemption of only nominal value in a tract of land subject to several mortgages, agreed with B to sell him a part of the tract for a price agreed, the proceeds to be applied in part payment of the mortgages. The mortgagees consented to release the portion for the

payment proposed, which *B* was to mortgage to a savings bank to raise the money to make the payment. The mortgagees thereupon executed a release to *A* of the portion in question, and *A* made a warranty deed to *B*, the papers all being deposited with the savings bank until the transaction was completed. One of the mortgagees however was an administrator and another a guardian, and the treasurer of the savings bank was of opinion that they could not, under the statute, release a part of the mortgaged property, and declined to make a loan on the part unless the whole tract was released. *B* therefore advised *A* to get this done, but *A* was not able to accomplish it and so informed *B*. *B* soon after procured elsewhere the money needed to purchase the part and informed *A* that he had it ready whenever he should make him a perfect title. Thus matters stood until *B* put upon record a caveat, claiming an equitable title to the portion in question and describing the release of a part, as at first proposed, as insufficient. Afterwards *C* purchased the equity in the whole tract at a sale of it by *A's* assignee in bankruptcy. Upon a suit in equity brought by *C* against *B* to remove the cloud from the title, it was held that the title expected by *B* under the agreement and demanded by the caveat being one which required a release of the whole tract by the mortgagees, which they were not bound to give and which they had not authorized *A* to stipulate for, *B* had not acquired an equitable title to the portion of the land in question.

BILL IN EQUITY to remove a cloud from a title; brought to the Superior Court. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*L. D. Brewster* and *H. B. Scott*, for the plaintiff.

*H. B. Munson* and *G. E. Terry*, for the defendant.

LOOMIS, J. This is a petition to remove a cloud upon the title of certain land, occasioned by a caveat signed by the defendant and recorded in the land records of the town, in which the defendant claimed to be the equitable owner, by reason of an agreement for the sale of the land to him by one Isaac W. Ives, owner of the equity of redemption. The land was subject to three mortgages—one to Joseph M. Ives, guardian, for nine hundred and thirty-five dollars, one to him individually for eight hundred and sixty-five dollars, and one to the plaintiff as administrator of Lyman Keeler for three thousand and five hundred dollars. The equity of redemption had no value, and the owner, Isaac W. Ives, was

a bankrupt; but he obtained from the mortgagees a quit-
claim releasing a part of the land from the mortgage so that
he might sell it and pay over the proceeds to them. Ives,
with this quitclaim deed, met the defendant on the 14th of
March, 1878, and made the agreement for the sale of the
land in his own name to the defendant. To enable the
latter to raise the purchase money, it was understood that
he was to obtain a loan from the Waterbury Savings Bank
and secure it by a mortgage of the land. Subsequently, on
the 4th of April, 1878, Ives and Brooks met at the savings
bank to consummate the bargain. The treasurer of the
bank drew a warranty deed from Ives to Brooks and a
mortgage from the latter to the bank, which were duly
executed and acknowledged. But the bank officers would
not make the loan to Brooks without first seeing the quit-
claim deed, which had been left with Mr. Terry, attorney
for the defendant, and could not then be produced. So that
the parties separated, leaving all the deeds in the hands of
the treasurer of the bank until he could examine the quit-
claim deed. If that should be satisfactory he was to furnish
the money immediately and have all the deeds recorded.
Afterwards during the same day the treasurer obtained the
quitclaim, but objected to it on the ground that an adminis-
trator and guardian had no power to release any portion of
the land mortgaged unless the entire debt secured by the
mortgage was paid, and the next day he wrote Ives to that
effect, recommending him to obtain another quitclaim of
the entire mortgage. After receiving this letter Ives com-
municated its contents to the defendant, and informed him
that the mortgagees had refused to release their entire secu-
rity for the proceeds of the sale of a single lot, and therefore
it would be impossible for him to comply with this new
requirement. The defendant replied by letter of April 9th,
in which, among other things, he said:—" I understand Mr.
Kingsbury has sent you a good and lawful paper since you
was here, and the best thing you can do will be to get it
signed and return it without delay." This referred to the
new quitclaim deed required by Mr. Kingsbury. And on

the 16th of April, the attorney of the defendant, at his request, wrote that the defendant had raised the money and it was on deposit with Mr. Kingsbury, to be paid to Ives when he should furnish a perfect title, obviously meaning such a title as the treasurer of the bank required. The plaintiff in bringing the present suit, stands not on his title as a mortgagee, which he held as administrator, but upon a title acquired by him individually by purchase of the equity of redemption from the assignee in bankruptcy of Ives.

From this condensed statement of the facts it seems clear that the defendant has no equitable title as against the plaintiff. Had he accepted the title offered he could have successfully resisted all the plaintiff's claims and enforced his own, but as the caveat states and the finding otherwise shows, he refused the offer and demanded just what the treasurer of the savings bank required, namely, a release from the plaintiff and the other mortgagees of their entire mortgage, covering other land than that which he purchased. So far as the plaintiff was concerned he had no right to insist on such a release.

It would have been most unreasonable and unjust to the mortgagees to require them to part with the entire security which they held for the avails of a part, amounting only to a part of the mortgage debt; and neither they nor the plaintiff ever made or authorized Isaac W. Ives to make any agreement of sale involving such consequences.

The quitclaim which the plaintiff and the other mortgagee consented to give had been executed and was exhibited to the defendant when the agreement for the purchase and sale was made, and this was the only basis of Ives's authority and fixed its utmost limits. The unfortunate feature of the contract was not owing to the desire or fault of either party, but wholly to a new and insurmountable obstacle unexpectedly thrust between them by the requirement of the bank treasurer. Brooks could not raise the money without meeting this requirement, and Ives could not procure the release of the entire mortgage with the avails of that part of the mortgage property sold.

It may be suggested that as the plaintiff and the other mortgagees authorized Ives to sell the land in question and quitclaimed the mortgage as to the portion to be sold, they should be held as authorizing the giving of a good title, or in other words, must be held as promising a valid quitclaim, and if they were mistaken as to their power to release a part of the land upon part payment only of the mortgage debt, they ought to suffer the consequences of their mistake, rather than the defendant, who made the contract for the purchase of the land relying upon a perfect title. This brings us directly to the question whether the quitclaim deed, which the savings bank rejected, would have been effectual to release the incumbrance of the mortgages on the land bargained to be sold to the defendant. The answer depends upon the construction of sec. 22, p. 355, of the General Statutes, Revision of 1875, which is as follows:—
"The executor or administrator of any deceased mortgagee, or any guardian or conservator whose ward is a mortgagee, may, on the payment, satisfaction or sale of the mortgage debt, release the legal title to the mortgagor or party entitled thereto."

We are not aware that this statute has ever been before any of our courts for construction, and it is to be regretted that the counsel on both sides avoided all discussion of this question.

The conclusion of the bank treasurer was occasioned by a strict construction of the language; this was the more prudent course for a bank officer in case of doubt. At first blush it seems plausible to hold that payment of a debt means full payment, and release of the legal title means a full, rather than a partial release, yet we are inclined to favor a more liberal construction. It may be regarded as payment of the debt so far as it equitably rests on the parcel sold, and as to that it is a full release of the legal title. It will often happen that more money can be obtained to apply on the mortgage by selling and releasing the land in parcels to different persons than could result from a sale of the entire tract, and the best interests of the wards will often

require such a course. We think the statute gives an administrator or guardian all the power necessary for making such a partial release.

Our conclusion therefore is, that the caveat recorded by the defendant is such a cloud on the plaintiff's title as equity will remove. It is found to work a present injury to the plaintiff by preventing the sale of the property, and on the other hand it is of no possible benefit to the defendant, for as we have seen he has no title legal or equitable which he can now enforce. It is against conscience for him to retain his caveat, for it can serve no possible purpose other than a sinister one. 1 Story Eq. Jur., (12th ed.,) sec. 700; *Holland* v. *Mayor*, 11 Md., 186; *Chipman* v. *City of Hartford*, 21 Conn., 488.

We advise the Superior Court to render judgment for the plaintiff and to deny the prayer of the cross-bill.

In this opinion the other judges concurred.