DELANE A. WILLARD, PLAINTIFF IN ERROR, v. EL-
BRIDGE FOSTER, DEFENDANT IN ERROR.

| 24 | 205 |
|----|-----|
| 30 | 379 |
| 24 | 205 |
| 35 | 591 |
| 24 | 205 |
| 38 | 147 |
| 24 | 205 |
| 41 | 681 |
| 24 | 205 |
| 44 | 147 |
| 24 | 205 |
| 45 | 297 |
| 24 | 205 |
| 46 | 329 |
| 24 | 205 |
| 52 | 743 |
| 24 | 205 |
| f59 | 604 |

1. Contract: TIME. The contract set out in the case examined, and *Held*, That time was not of its essence.

2. ——: NOTICE. The notice set out in the pleading and evidence, *Held*, Not to apply to the defendant or to the class of purchasers to which he belonged.

3. Specific Performance. The evidence of fluctuations in the market value of the land embraced in the contract, *Held*, Not sufficient under the facts and circumstances of the case to deprive the defendant of his right to a specific execution of the contract for a conveyance of the land upon the tender and payment plead and proved.

ERROR to the district court for Boone county. Tried below before TIFFANY, J.

*M. V. Moudy* and *W. F. Critchfield,* for plaintiff in error, cited: *McAusland v. Pundt,* 1 Neb., 251. Hilliard on Vendors, First Ed., 443–4. *Bird v. Logan,* 10 Pac. Rep., 569. Pomeroy on Spec. Perf. (1st Ed.), Secs. 382–385. *Settle v. Winters,* 10 Pac. Rep., 222–3. *McDermid v. McGregor,* 21 Minn., 111. *Smith v. Lawrence,* 15 Mich., 500. *Holgate v. Eaton,* 116 U. S. Sup. Ct., 33.

*M. Whitmoyer,* for defendant in error, cited: *Shuman v. Willetts,* 17 Neb., 479. *Kellogg v. Lavender,* 9 Neb., 419. *Richmond v. Robinson,* 12 Mich., 201. *Benson., Admr., v. Cutler,* 53 Wis., 107. *Mathews v. Gilliss,* 1 Iowa, 253. *Bomier v. Caldwell,* 8 Mich., 469.

COBB, J.

The plaintiff in error sued the defendant in error in the district court of Nance county, in ejectment, to recover the possession of a tract of eight and $\frac{82}{100}$ acres of land. The

defendant answered, alleging and setting up as a counter-claim that, "on the 5th day of April, 1880, the plaintiff and one George E. Willard were the owners as tenants in common of the property in controversy in this suit"(de-scribing the same as in the petition). That "on the said 5th day of April, 1880, the said defendant purchased said tract of land from plaintiff and the said George E. Willard, for the sum of one hundred and seventy-six and $\frac{40}{100}$ dollars. Of said purchase price defendant paid to plaintiff and said George E. Willard the sum of twenty dollars, at the time of said purchase, and the balance of $156$\frac{40}{100}$ the defendant promised to pay in three equal annual payments, with eight per cent per annum interest thereon until paid; that at the time of said purchase the plaintiff and said George E. Willard executed and delivered to defendant their written undertaking and agreement, in which they cov-enanted and agreed to and with the defendant, to grant, as-sure, and convey unto him the aforesaid tract of land, by good and sufficient deed, at the time of the payment of the balance of the consideration price of said land, as hereinbe-fore stated; that on the purchase of said land as aforesaid, and upon the execution of said written agreement, plaint-iff and said George E. Willard surrendered and delivered to defendant full and complete possession and enjoyment of the said premises, and the defendant entered upon and took possession thereof, under and by virtue of said pur-chase, with the full knowledge and consent of plaintiff and said George E. Willard, and has continued to occupy and enjoy the same to this time, by virtue of said contract of purchase; that on the 9th day of May, 1882, two of the annual payments provided for in said written agreement were due and unpaid, and on said 9th day of May, defend-ant, in the village of Genoa, in the county of Nance, duly tendered to plaintiff the amount of said two pay-ments, and on the 15th day of May, 1882, in said village of Genoa, defendant again in due form tendered to the

Willard v. Foster.

plaintiff the amount of said two payments then due and payable according to the terms of said contract. But the plaintiff refused to accept said payments, and still refuses to accept the same, although defendant has kept said tender good, and has repeatedly tendered the said payments to him since the 15th day of May, 1882, to-wit, on the 5th day of September, 1882, and at other times, and on the 5th day of April, 1883, the third and last of said three annual payments, by the terms of said agreement, became due and payable; and on this 5th day of April, in the said village of Genoa, etc., that being the residence and place of business of said plaintiff, this defendant in due form tendered to him the full sum of one hundred and fifty-six and $\frac{40}{100}$ dollars, with 8 per cent interest thereon since April, 1880, and demanded a deed for said land, as provided for in the said written contract, but said plaintiff then refused, and has ever since refused, to execute and deliver to defendant a deed for said land; that defendant has kept his said tender good, and now brings the amount due plaintiff into court for his benefit, subject to the orders of the court."

The defendant's answer further states upon information and belief that plaintiff has, since the execution of said written contract, acquired by purchase or otherwise all of the interest of the said George E. Willard in and to the said land, wherefore defendant prays that the plaintiff may be required by the decree of the court to receive the sum so tendered and to execute and deliver to him a good and sufficient deed for said land, etc.

The plaintiff made reply, in which he admitted the making of the written contract with the defendant as set out in the first paragraph of his answer, but denied all the other allegations of the answer, and alleged that on the 9th day of June, 1881, the first annual payment on the said contract being past due and unpaid, the plaintiff gave notice to the defendant and all other parties and their assigns who

had contracted with the plaintiff and the said George E. Willard for the purchase of village lots in and at the village of Genoa, to the effect that unless the defendant and others should appear within thirty days from said date, and fully pay up and comply with the conditions of said contract of purchase, according to said agreement and the terms thereof, that the same would be declared void and canceled by plaintiff, etc., to which defendant gave no heed or attention whatever, etc. Also that in the year 1881, when the payment became due on said contract as set forth in said answer, said premises had greatly depreciated in value and were not worth to exceed the sum of ten dollars per acre, and that for some time the market value thereof did not exceed said sum; that during said time the defendant declared his intention to abandon said contract, for the reason that he could purchase lands for a much less sum than he had agreed to pay in said contract. That afterwards, to-wit, during the spring of 1882, by reason of certain public improvements contemplated and secured to the village of Genoa, and for other reasons, said premises rapidly rose in value and became of the market value of fifty dollars per acre, and for the first time the defendant offered to comply with his said contract.

The venue of said cause having been by stipulation of the parties removed to Boone county, was tried to the court, which found for the defendant; that he was entitled to a specific performance of the said contract, and adjudged that upon the payment of the sum of $194.75, the sum paid into the clerk of the district court of Nance county by said defendant to said plaintiff, the plaintiff shall convey to said defendant the premises described in the answer.

The plaintiff brings the cause to this court on error, and assigns the following errors:

1.  The court erred in finding that the defendant, Foster, was entitled to the specific execution of the contract set forth in defendant's answer.

2. The court erred in not finding that the said defendant, Elbridge Foster, had abandoned said contract for the purchase of said premises.

3. The court erred in not finding that the said Elbridge Foster had forfeited all his rights under said contract.

4. The court erred in admitting evidence to show the condition of said premises after the commencement of said action.

5. The court erred in rendering judgment in favor of said defendant and in decreeing conveyance of the premises described in plaintiff's petition to said defendant by the said plaintiff.

6. The court erred in refusing to decree said contract null and void.

7. The court erred in refusing plaintiff the relief prayed for in said petition and reply.

Upon the trial, Delane A. Willard, the plaintiff, was sworn and examined as a witness on his own behalf, and testified that he was the owner of the land in controversy; that he acquired all of the interest of George E. Willard therein before the commencement of this suit; that all he had ever received from the defendant on said contract was $20, received at the time of entering into the contract; that he gave a notice in a newspaper published in Genoa, and gave a copy of such notice, as follows, to-wit:

"Public Notice. Notice is hereby given to all parties and their assignees who have contracts, either in writing or verbal, with George E. Willard or D. A. Willard, for the purchase of village lots in the village of Genoa, Nance county, Nebraska, that unless they appear in thirty days from this date and comply fully with the terms and conditions of said contracts, according to agreement, the same will be declared void and canceled, and in this they are each warned not to make default.

"(Signed)          D. A. WILLARD.

"*Sole Proprietor, and Assignee of George E. Willard.*"

14

The date of this notice witness declared to be June 16, 1881, and was published for about six weeks. That the defendant offered to make the delayed payments on said land about the 10th day of May, 1882, soon after the return of witness from the East; that none of said payments were then due; that there was no one occupying the land at that time; that witness sent his hired man to plow up and plow under the weeds; that it was then grown with weeds; that the property lay just adjoining the town of Genoa, and joins it on the west. It is in the same quarter section. That in 1881 there was no sale for property, the property was almost valueless, and was not considered much better than farm land.

Plaintiff, as a witness on his own behalf, further testifies that he laid off the town of Genoa in 1880; that shortly afterwards there was an election for county seat, and that "we expected we had the county seat, we had it by the vote, but we lost it by the court. That made the property valueless. It was about this time that the property was disposed of to the defendants." The decision was adversely to the county seat in 1881. The property fluctuated in value from 1880 to 1881, "I should think one-half;" that the depression lasted until the spring of 1882; that property then went up nearly half; that this occurred soon after the return of plaintiff from the east; that the rise of property was before defendant made the tender.

After his cross-examination by the defendant, plaintiff stated in answer to a question by the court, as follows:

Q. The price it was contracted for, was the fair market value at the time it was contracted for?

A. Yes, sir.

Q. What was the fair market value per acre in 1882?

A. I should judge it was worth about $50 per acre.

Q. In October, 1882?

A. Yes, sir, from $40 to $50. That is what I should judge it to be.

Q. At that time you brought your suit, in October, 1882?

A. I can't tell for certain when I brought it. I should think it was about in September; sometime in September or October.

There was other evidence on the part of the plaintiff to the effect that the price of property in and about the village of Genoa was low, and the property unsalable until the summer and fall of 1882, when the establishment of the Indian school at that place, and other circumstances, caused it to appreciate in price, and become salable.

The defendant, who was sworn as a witness in his own behalf, testified that when he purchased the land and went into possession of it, in 1880, it was covered with cockle burrs and wild sun-flowers, also "Mormon ditches;" that he cultivated it in 1880. In 1881 he filled the ditches, hauled on it 180 loads of manure; in 1881, planted out about forty trees, also cultivated the land. In 1882, cultivated the land and trees. Had exclusive possession and control of said land during the entire time since the purchase of the land, and paid the taxes; that he never abandoned the land; that when he bought the land he paid on it $20. On the 9th day of May, 1882, he went to the plaintiff in his office and offered him the two payments. He refused to take them. In a day or two, again, together with his son, defendant went to plaintiff at Humbaugh's, and offered him the amount of the principal and interest of the said two payments, which he again refused; that some time after the above tenders were made, the third and last deferred payment became due, and on the day it became due, defendant, being sick, sent his son to the plaintiff to tender him the money, and that his son did then and there carry the money to plaintiff, and did tender him the whole amount of principal and interest due on said land contract, which he refused. As the reason why the defendant did not make the two first deferred payments punctually at the

several times of the same becoming due according to the terms of said contract, he testified as follows:

Q. State why you did not pay this money, this first money, when it came due?

A. The times were hard then, and I had to work out for a living, and I had a large family, and I lost one of my horses, and worked around, so I fell short that season.

Q. How do you mean you fell short?

A. I could not raise the money.

Q. State whether you made the payment as soon as you could raise the money?

A. I did.

Q. Where and when did you make the tender?

A. In 1882.

Q. Now you may state when you made another tender after that; after it was all due, that is, did you deposit any money for him to get it after suit was brought?

A. Yes, sir, at Fullerton.

Q. With whom?

A. Mr. McClellan, deputy sheriff there, I mean deputy clerk. The money was left there, and is there yet.

Again, on his cross-examination:

Q. Up to the time in 1882, did you ever offer to pay Mr. Willard anything on this land?

A. Not until I got those two payments in 1882.

Q. Did you ever see him and ask him about it?

A. I met him on the street and said I intended to give him that payment as soon as I could, and I done so, and he said he was not in very much want of money.

*      *      *      *      *      *

Q. What payment was that?

A. The first payment in 1881.

Q. Who else was present?

A. No one.

Q. How long after that payment was due was that?

A. Oh, it was not very long, I don't think it was very long.

Q.   Was it after you had seen that notice in the paper?

A.   No, sir.

Q.   It was before that time, was it?

A.   I don't know.   I guess I did see that notice about that time.

Q.   Did you not see him after you saw that notice?

A.   I didn't.

Q.   You did not say anything to him about it from that time until 1882, did you?

A.   I don't think I did.

The following is a copy of the substance of the contract offered in evidence:  "For the consideration of twenty dollars per acre, amounting to one hundred and seventy-six dollars and forty cents, twenty dollars of which is to be paid on signing this agreement, and the balance in three equal annual payments, with interest to the time of payment at the rate of eight per cent per annum.

"And the said party of the first part covenants and agrees to pay unto the said party of the second part for the same, the sum of one hundred and seventy-six and $\frac{40}{100}$ dollars, as follows, viz.: twenty dollars cash, the receipt whereof is hereby acknowledged by the party of the second part, and the balance in three equal payments with interest as above stipulated, with interest on the amount due payable at the time of each payment."

The whole of the errors assigned are directed to the findings and judgment of the court upon the merits of the case, except the fourth, which is upon the admission of evidence.

The cause was tried to the court without the intervention of a jury.   In causes thus tried, it has been often held by this, as well as other courts, that error for the admission of improper evidence would not lie.   The court must necessarily have an opportunity to examine each article of evidence offered, even for the purpose of rejecting it; and so the duty of acting and deciding the cause, upon the

legal and relevant evidence selected from the mass that may have been introduced, may be as well discharged by the court upon the final consideration of the cause, as to pause in the course of the trial, to pass upon the admissibility of the several matters offered in evidence.

The other assignments will be considered together.

It is not claimed, nor can it be, that time was of the essence of the contract as drawn and executed. Was it made so by the notice published by the plaintiff as proved and set out in the evidence? The contract was executed and the defendant entered into the possession of the premises April 5, 1880. By the terms of the contract the first annual payment became due on the 5th day of April, 1881. It was not made. On the 16th day of June, following, the plaintiff published the notice. It is not deemed necessary to enter into a discussion of the legal effect of this notice upon the class of cases to which it is applicable. It appears from the evidence that it was seen by the defendant, but that he did not consider it was intended for, or applied to, the case of his contract. It was addressed to the purchasers of village lots, and their assignees. The premises described in defendant's contract was not a village lot, but a piece of agricultural land adjoining the village. True, it was stated by one witness that it had once been surveyed off into lots, but was not platted or placed in the village plat, as finally adopted and recorded by the proprietors. It was not bought or sold as a village lot, nor do I perceive any reason why the defendant should have regarded himself as of the class of persons addressed by the notice. Again, it appears from the evidence that both the plaintiff and defendant were inhabitants of the same immediate neighborhood if not of the village itself. They saw each other every day, and the plaintiff had daily opportunities to make personal demand of payment of the defendant. It also appears from the evidence of the defendant, contradicted it is true by the

plaintiff, that about the time of the publication of the notice, whether before or afterwards does not very clearly appear, nor is it material, the defendant spoke to the plaintiff, about the said payments, and was replied to by him that he was in no great want of the money. This evidence could not be disregarded by the trial court, and it is presumed to have had weight, in connection with the other facts and circumstances, in leading to the decision reached.

The fluctuation in the market value of the land presents by far the most serious question involved in the case. But I do not think that the evidence presents a case which, on account of the market price of the subject of the contract, would call upon a court to deny to the defendant that equitable consideration and relief, which upon the general view of the case he appears to be entitled to.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.