Hon. ROBERT RYAN,
Hon. JOHN M. RAGAN, } Commissioners.
Hon. FRANK IRVINE,

---

## Orin P. Whipple v. Lucy D. Fowler.

### Filed September 18, 1894. No. 5614.

1. **Pleading**: Amendment to Conform to Testimony: Trial. Where, upon the trial of an action, testimony is admitted without objection, it is not error for the court to permit the pleadings to be amended to conform to the proof.

2. **Trial to Court**: Admission of Incompetent Testimony: Review. In a cause tried to the court without the intervention of a jury, the admission of incompetent testimony is not reversible error.

3. **Mortgages**: Release: Escrow: Effect of Unauthorized Delivery. Where a mortgagee executes a release of a mortgage and places the same in the hands of a third party to be deliv-

(675)

ered to the mortgagor upon his paying the mortgage debt, which condition the mortgagor never performed, and the release is placed upon record without the knowledge or consent of the mortgagee, neither the mortgagor, nor one who is not a *bona fide* purchaser without notice, will acquire any rights or advantage by the recording of such release.

4. A mortgage of real estate is regarded as a mere incident of the debt, which, by the legal transfer of the debt, passes with it to the assignee.

5. **Unauthorized Satisfaction of Mortgage:** Lien: Bona Fide Purchasers. A satisfaction entered on the record by a mortgagee, after he has sold and delivered the notes secured by the mortgage to a third party, will protect a subsequent mortgagee in good faith, or *bona fide* purchaser, of the mortgaged premises, in case he had no notice at the date of the purchase, or the payment of the consideration, that the debt was assigned, or was unpaid, or that the release was unauthorized; but as to all other persons the lien of the mortgage will not be impaired.

6. **Conflict of Laws:** Lex Rei Sitæ: Mortgages: Assignment of Notes: Distribution of Proceeds. In the state of Iowa the rule is that the transfer of one of several notes, maturing at different times and secured by the same mortgage, operates as an assignment *pro tanto* of the mortgage, and that the proceeds arising from the sale of the mortgaged property would be applied first to the payment of the notes in the order of time in which they fell due; but in this state, in such a case, the several holders are entitled to share *pro rata* in the proceeds.

7. ———: ———: ———. In the construction by the courts of this state of a mortgage executed in Iowa, upon real estate situate in that state, the *lex rei sitæ*, or the law of Iowa, governs.

Error from the district court of Lancaster county. Tried below before Tibbets, J.

The facts are stated in the opinion.

*Mockett, Rainbolt & Polk*, for plaintiff in error, contending that the release discharged the lien of the mortgage and that the mortgaged premises cannot be subjected to the payment of the notes held by plaintiff, cited : *Executors of Swartz v. Leist*, 13 O. St., 419; *Torrey v. Deavitt*, 53 Vt.,

331; *Fox v. Wray,* 56 Ind., 423; *Reeves v. Hayes,* 95 Ind., 532; Thomas, Mortgages [2d ed.], sec. 421; Jones, Mortgages [4th ed.], secs. 472, 791, 820, 878, 967; *Ahern v. Freeman,* 24 Am. St. Rep. [Minn.], 206; *Blight v. Schenck,* 51 Am. Dec. [Pa.], 478.

The defendant is liable for damages caused by executing the release and permitting it to be filed. (1 Jones, Mortgages [4th ed.], sec. 814; Thomas, Mortgages [2d ed.], sec. 358; *Fox v. Wray,* 56 Ind., 423; *Lincoln v. Purcell,* 73 Am. Dec. [Tenn.], 196; *Ferris v. Hendrickson,* 1 Edwards' Ch. [N. Y.], 132.)

The court erred in admitting the evidence of George M. Traver on the question of value. The witness had not shown himself competent to testify. (*Missouri P. R. Co. v. Coon,* 15 Neb., 232.)

*Ricketts & Wilson, contra:*

A deed deposited in escrow, to be delivered on conditions named, does not become the deed of the maker until the conditions have been complied with; and any delivery of the deed prior to the performance of the conditions, or any placing thereof of record prior to the performance of the conditions, does not give to the deed any validity whatever. (*Stanley v. Valentine,* 79 Ill., 544; *Smith v. South Royalton Bank,* 32 Vt., 341; *People v. Bostwick,* 32 N. Y., 450; *Everts v. Agnes,* 4 Wis., 356; *Black v. Shreve,* 13 N. J. Eq., 458; *Dyson v. Bradshaw,* 23 Cal., 536; *Ogden v. Ogden,* 4 O. St., 191.)

When the defendant in error had transferred the debt secured by the mortgage, she had no power to release the mortgage of record, and any attempt at release would be a nullity. (*Studebaker Mfg. Co. v. McCargur,* 20 Neb., 500; *Daniels v. Densmore,* 32 Neb., 40; *Reeves v. Hayes,* 95 Ind., 521; *James v. Morey,* 2 Cow. [N. Y.], 246; *Lee v. Clark,* 89 Mo., 553; *Wolcott v. Winchester,* 15 Gray [Mass.], 461; *Burhans v. Hutcheson,* 25 Kan., 625.)

The sale and delivery, before maturity, of mortgage notes carry with them an assignment of the real estate security; and satisfaction of the mortgage by the payee, after he sold and delivered the notes, is a mere nullity, and can neither weaken the security of the notes sold, nor strengthen the title of the party who afterwards buys the land. Parties buying mortgaged premises must at their peril ascertain who owns the notes and whether the same have been actually paid. (*Lee v. Clark*, 1 S. W. Rep. [Mo.], 142; *Vandercook v. Baker*, 48 Ia., 199; *Scott v. Field*, 75 Ala., 419; *Martindale v. Burch*, 57 Ia., 291; *Brayley v. Ellis*, 32 N. W. Rep. [Ia.], 254; *Treadwell v. Brooks*, 50 Conn., 262.)

The record of the mortgage was sufficient to lead a prudent man to inquire as to the payment of the notes. Wright was not a *bona fide* purchaser. (*Burhans v. Hutcheson*, 25 Kan., 625; *Campbell v. Vedder*, 3 Keys [N. Y.], 174.)

A vendee who has notice of adverse rights before payment is not a *bona fide* purchaser. (2 Pomeroy, Equity Jurisprudence, 715; *Kitteridge v. Chapman*, 36 Ia., 348; *Roseman v. Miller*, 84 Ill., 297; *Haughwout v. Murphy*, 21 N. J. Eq., 118.)

NORVAL, C. J.

This was an action to recover damages for the wrongful releasing of record of a certain real estate mortgage by Lucy D. Fowler, the mortgagee, after she had transferred to the plaintiff, Orin P. Whipple, two of the promissory notes secured by said mortgage, and before said notes had been paid. Upon a trial to the court there was judgment for the defendant, to reverse which the plaintiff prosecutes error to this court.

The undisputed facts, as disclosed by the record, may be summarized thus: M. C. and A. A. Hazard on the 16th day of October, 1888, executed and delivered to the defend-

ant their thirty-four promissory notes, aggregating the sum of $7,000; one for the sum of $500, due February 12, 1889, $100 maturing March 12, 1889, and the remaining thirty-two notes for the sum of $200 each, one payable on the 12th day of April, 1889, and one falling due on the 12th day of each month thereafter. To secure the payment of the said several notes, the Hazards executed and delivered to the defendant a mortgage on lots 841, 842, and 843, in the town of Shenandoah, Page county, Iowa, which instrument was duly recorded in the recorder's office of the said county on November 13, 1888. Subsequently the mortgagee, Lucy D. Fowler, sold and transferred several of the said notes to different parties,—the two maturing May 12, 1890, and June 12, 1890, respectively, being transferred by her, by indorsement without recourse, to the plaintiff, Orin P. Whipple, on the 4th day of December, 1888. No formal assignment of the mortgage to the plaintiff was made. The remaining twenty-two notes secured by said mortgage, and being the ones last falling due, which were held and owned by the defendant, were sold and transferred by her to one T. J. Evans on the 29th day of December, 1888, and on the same day, without the knowledge and consent of plaintiff, she executed and acknowledged a written release, or satisfaction, of said mortgage, which was filed for record in the office of the recorder of said Page county on January 21, 1889. Afterwards, on the 13th day of July, 1889, the Hazards conveyed the lots covered by said mortgage to one W. H. Wright, which conveyance was recorded on the 15th day of the same month. The two notes transferred to the plaintiff remain wholly unpaid, although judgment has been recovered thereon against the makers, and execution has been issued on such judgment, which was placed in the hands of the sheriff and the same has been by him returned wholly unsatisfied. At the time of the release of the mortgage the Hazards were insolvent, and so have been ever since. The sum of $2,600 was due

on the mortgage prior to the notes transferred to and held by plaintiff. It is admitted by both parties that there is upon record a mortgage of $5,000 on the property, given by one Parks to one Kennedy, which is wholly unpaid, and which is prior in point of time to the said mortgage of the Hazards to Fowler. The foregoing facts appear without controversy. In fact the only substantial conflict in the testimony is upon two points, namely, the value of the mortgaged premises, and the facts and circumstances surrounding the execution of the release of the mortgage in controversy, which will be adverted to hereafter.

We will notice the several errors relied upon for a reversal of the judgment, although we will not attempt to follow the order in which they are discussed in the brief of plaintiff. We will first consider the objection urged to the allowing the defendant to amend her answer during the trial to correspond to the evidence introduced. The plaintiff had alleged in his petition in the court below, which the original answer when first filed admitted to be true, that by the laws of the state of Iowa the transfer of one of several notes secured by the same mortgage operates as a transfer *pro rata* of said mortgage. After the plaintiff had rested, the defendant, when making out her case, introduced, without objection, the opinion in the case of *Walker v. Schreiber*, reported in 47 Iowa, 529, for the purpose of showing that under the laws of that state, where a mortgage secures several notes, which are transferred to different persons, each holder of the note takes a *pro tanto* interest in the mortgage, and the note first maturing must be the first paid. The defendant was thereupon permitted by the court, over plaintiff's objection, to withdraw her said admission in the answer and to amend her pleading to conform to the evidence. This was proper and in accordance with a familiar and just rule in this state of long standing, that where testimony is received without objection, the court may permit the pleadings to be amended to

conform to the facts proved. (*Keim v. Avery,* 7 Neb., 54; *Catron v. Shepherd,* 8 Neb., 308; *Brown v. Rogers,* 20 Neb., 547; *Ward v. Parlin,* 30 Neb., 376.)

Error is assigned upon the ruling of the court below in admitting the testimony of the defendant's witness, George M. Traver, on the question of the value of the mortgaged premises. It is insisted that the witness had not shown himself competent to testify upon that subject. We are satisfied that the criticism upon the ruling referred to is not without merit, and that Traver's testimony was incompetent and should have been excluded; but it does not follow that the judgment should be disturbed for that reason. It is the established doctrine of this court that the admission of incompetent testimony, where the cause is tried to the court without a jury, is not sufficient ground for the reversal of the case. (*Enyeart v. Davis,* 17 Neb., 228; *Willard v. Foster,* 24 Neb., 213; *Richardson v. Doty,* 25 Neb., 424; *Ward v. Parlin,* 30 Neb., 376; *Stabler v. Gund,* 35 Neb., 651.) The reason for the rule given in the opinion in the cases cited need not be now restated. These authorities control the decision in the case before us upon the question under consideration.

Errors were likewise assigned upon the admission, over the objection of plaintiff, of the testimony of several of the witnesses; but these rulings require no special attention, since they fall within the rule stated above.

It is urged that the judgment is unsupported by the evidence and is contrary to the law of the case. It is undisputed that the defendant executed a release of the mortgage in controversy, and that the same was recorded in the proper county, prior to the transfer of the mortgaged premises to Wright. There is, however, an irreconcilable conflict in the testimony as to who placed the release upon record, how the same came to be executed, and whether there was an actual delivery of the release to Evans. The testimony adduced on the part of the plaintiff tended to show that there

was no agreement between the defendant and Evans at the
time of the transfer of the notes by the former to the latter
that a release of the mortgage should be executed, but on
the contrary the arrangement between them was that there
should be executed an assignment of the mortgage to Evans;
that defendant agreed to make it out and carry the same to
the county seat of Page county, Iowa, and cause it to be re-
corded; that Evans paid defendant the recording fees; that
instead of executing an assignment, a release of the mort-
gage was made, which was never delivered to Evans, but
was placed upon record by the defendant. L. D. Fowler,
the agent of the defendant and acting for her in the trans-
action, testified that an assignment of the mortgage was not
talked of, but that it was expressly agreed between Evans
and witness that the defendant should execute a release of
the mortgage, and place the same in Evans' hands in escrow,
to be held by him and delivered to the mortgagors when all
the notes secured by the mortgage were paid, and not before;
and that upon the execution of the release it was so de-
posited with Evans. The bill of exceptions also contains
evidence conducing to establish that the defendant neither
recorded the release, nor authorized its record, nor gave her
consent to its being filed on any condition except that all
the notes secured by the mortgage were first fully paid.
That plaintiff's notes have not been paid, nor any part
thereof, all agree. While the testimony of the greater
number of the witnesses tends to support the contention of
the plaintiff, there is in the record before us ample evi-
dence, if true, to sustain the defendant's theory. The trial
court made no special findings, hence we are not advised of
the ground, or grounds, upon which the decision was
placed. In other words, whether it was held that the re-
lease was deposited with Evans in escrow, and was subse-
quently filed for record without the conditions of the hold-
ings having been complied with, and, therefore, in law the
release was a mere nullity; whether the case was decided

in the lower court upon the ground that plaintiff was not damaged by reason of the discharge of the mortgage, or because Wright was not a *bona fide* purchaser of the property covered by the mortgage, but acquired the same chargeable with notice of plaintiff's lien, and, therefore, that plaintiff could have foreclosed his mortgage had he so desired. There being a general finding of the issues against the plaintiff, we must assume that every conflict in the testimony was settled by the court in favor of the defendant, hence that the release of the mortgage was deposited in escrow, and that the release was filed for record before the conditions were performed upon which it was placed in Evans' hands. There is no pretense that the release was ever delivered to the mortgagors, or to the recorder for them, but was delivered for record by mistake, it being supposed that the instrument was an assignment of the mortgage, instead of the release thereof, as it in reality was. As to the mortgagors, the release was inoperative and absolutely void.

In *Stanley v. Valentine*, 79 Ill., 544, it was held that where a mortgagee executed a release of a mortgage and places the same in the hands of a third party, to be delivered to the mortgagor upon the performance by him of certain conditions, which the mortgagor never performed, and by accident or mistake was afterwards placed upon record, without ever having been delivered to the mortgagor, such a release is a nullity. Mr. Justice Walker, in delivering the opinion of the court, in discussing the question observed: " It is manifest to all that a deed cannot be operative until it is delivered. Perkins, who wrote his treatise on conveyancing more than three centuries since, says: 'And if I make a deed and deliver it to a stranger as an *escrowl*, to keep until such a day, etc., and upon condition that if, before that day, he to whom the *escrowl* is made shall pay me ten pounds, give me a horse, enfeoff me of a manor, or perform any other condition, then the stranger

shall deliver the *escrowl* to him as my deed.   In this case, if he deliver the same to him as my deed before the conditions or condition fulfilled, it is not my deed *simpliciter;* but if the condition be fulfilled and the *escrowl* delivered by him, after the conditions performed, as my deed, then it is my deed and shall bind me, and then begins to be my deed, and shall not have relation to the first delivery.'   This, perhaps, is as early an announcement of the rule as may be found in the books, and is the same as the definitions given by the courts and text-writers since that time.   We are aware of no change in the rule since he wrote.   (*Price v. Pittsburgh, F. W. & C. R. Co.,* 34 Ill., 13.)  Then, if a delivery before condition performed confers no title, it is difficult to perceive how others can acquire title from the grantee named in the *escrow.*   Washburn on Real Property (vol. 3, p. 372a) says : 'If a deed is delivered before the previous condition is performed, it will not be the deed of the grantor, or have any effect as such;' and he refers to numerous authorities which support the text.   The case of the grantee getting possession of the escrow by fraud, before the condition performed, and then selling the land to an innocent purchaser, was fully discussed in *Shirley v. Ayers,* 14 O., 308.   The court say : 'Until the performance of the condition, it (the deed) must remain a mere scroll in writing, of no more efficacy than any other written scroll; but when, upon the performance of the condition, it is delivered to the grantee or his agent, it then becomes a deed to all intents and purposes, and the title passes from the date of the delivery.   The delivery, to be valid, must be with the assent of the grantor.   If the grantee obtain possession of the escrow without performance of the conditions, he obtains no title thereby, because there has been no delivery with the assent of the grantor, which assent is dependent upon compliance with the condition.   The recording of an escrow does not make it a deed."   The learned judge, after citing numerous authorities in support

of the doctrine announced, says: "From these authorities it would appear that even a grantee is not protected by a purchase, however honestly and fairly he may have acted, unless there was a delivery to his grantor. But we are not required to go the length of the rule announced in these cases to hold the release inoperative and void in this case. But here, the release never went into the hands of Mrs. Valentine. She did not know or intend that the release should be placed on record, hence this case is not as strong as some of those referred to above. * * * In the light of the decisions referred to, there is no force in the objection that appellant, by making the escrow and placing it in the hands of an agent, and it having got upon the record, should be estopped to deny that it is his deed. We have seen that such is not the rule, and it should be especially so here, as the judgment creditors have advanced no money, given no credit, or done any act by which they have changed their attitude to the case."

In the case at bar it is urged that Wright was a *bona fide* purchaser of the real estate covered by the mortgage, since at the time the conveyance was made he found the record of the mortgage released by the mortgagee, and he had no actual notice of the transfer of the notes, or that they had not been paid; hence it is contended that the purchaser had a perfect right to rely on the record, and he took the land free of the lien of the mortgage. How far an innocent grantee would have been protected it is unnecessary to stop to consider, since it does not appear that Wright was an innocent purchaser of the property. To become such he should have paid full value, and parted with the consideration before he learned of the existence of the mortgage. The rule is too familiar to require the citation of authority to support it. The records fail to disclose that Wright ever paid the purchase price. The mortgage was of record, which showed on its face that the last of the notes secured thereby matured on November 12, 1891, or

more than two years subsequent to the date of the purchase. The deed from the Hazards to Wright contained the following clause: "And we hereby covenant with the said W. H. Wright that we hold said premises by good and perfect title; that we have good right and lawful authority to sell and convey the same; that they are free and clear of all liens and incumbrances whatsoever of record except mortgage above, and we covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever, with exceptions herein." The mortgage of $5,000 from Parks to Kennedy was excepted in the deed. We think the phrase "of record" in the foregoing covenant against incumbrances, when taken in connection with the fact that the mortgage had been released long before the notes secured thereby fell due, was sufficient to put a prudent man on inquiry as to whether there were not liens against the premises which did not appear on such record. At least it was ample to have led a cautious person to inquire whether the notes secured by the mortgage in controversy had in fact been paid so long before their maturity. Our conclusion, taking all things into consideration, is that Wright was not a *bona fide* purchaser within the meaning of the law; therefore plaintiff could have successfully maintained a foreclosure of the mortgage against him.

There is another question argued in the brief of counsel which may be properly noticed at this time, and that is whether a mortgagee can execute a valid release of a mortgage after he has assigned to a third party the notes secured by the mortgage, and whether such satisfaction, entered of record, will operate to discharge and cancel the record of the mortgage, as to subsequent purchasers or mortgagees in good faith, and without notice. There is considerable conflict in the adjudicated cases upon the proposition. Some state the doctrine broadly that a discharge entered upon the record of a mortgage, by a mortgagee, after he has sold

and delivered the notes, is a nullity, and neither weakens the security of the party to whom the notes were transferred, nor strengthens the title of a subsequent vendee who purchased the mortgaged premises in good faith. (See *Lee v. Clark*, 1 S. W. Rep. [Mo.], 142; *James v. Morey*, 2 Cow. [N. Y.], 246; *Reeves v. Hayes*, 95 Ind., 521; *Scott v. Field*, 75 Ala., 419; *Treadwell v. Brooks*, 50 Conn., 262.) There is another line of well considered cases, and which we prefer to follow, which lays down the rule that the entry of satisfaction of a mortgage of record by the mortgagee, after he has sold the notes secured by the mortgage to a third party, will* protect a subsequent *bona fide* purchaser of the mortgaged property, in case he had no notice at the time of such purchase, or the payment of the consideration, that the note was unpaid, or that the release or discharge of the mortgage was unauthorized; but as to all other persons the lien of the mortgage will not be impaired.    As sustaining this view the following authorities may be cited: *Executors of Swartz v. Leist*, 13 O. St., 419; *Bank of the State of Indiana v. Anderson*, 14 Ia., 544; *Vannice v. Bergen*, 16 Ia., 555; *McClure v. Burris*, 16 Ia., 591; *Cornog v. Fuller*, 30 Ia., 212; *Ogle v. Turpin*, 102 Ill., 148; *Ahern v. Freeman*, 46 Minn., 156; *Livermore v. Maxwell*, 55 N. W. Rep. [Ia.], 37.

The case cited in 13 Ohio State is very much like the one at bar. The facts were these: William Hurel executed and delivered to one Peter Little a mortgage on certain real estate to secure a note for $200, which mortgage was duly recorded. Little sold the note to plaintiff's testator, William Swartz. Afterwards, but before the maturity of the note, Little wrongfully, and without the knowledge of Swartz, entered on the margin of the record of the mortgage a release in due form. Subsequently, the mortgagee sold and conveyed said mortgaged premises to the defendant Leist. The holder of the note brought his action against the purchaser, praying the foreclosure of the mort-

gage.  Scott, J., in the opinion of the court, says: "In the case before us, Swartz, by becoming the legal owner of one of the notes protected by the mortgage, acquired an interest in the security which it afforded, in the absence of any special agreement to the contrary, and this interest he might assert as against both mortgagor and mortgagee, so long as the security subsisted.  Under these circumstances, it cannot be doubted that the release of the mortgage by Little was wrongful.  It was a fraud upon the rights of Swartz, and those rights would remain unaffected as against all parties participating in, or cognizant of, the fraud. But the question in this case is, whether the rights of Swartz were such that they can be asserted against a *bona fide* purchaser from the mortgagor, who, without notice of the lien claimed by Swartz, has parted with his money, relying upon a statutory discharge of the mortgage, which he found executed by the mortgagee, and properly entered upon the record.  The rights of Swartz were, as we have said, purely equitable.  No title to, or estate in, the mortgaged premises had been conveyed to him.  A legal title to lands cannot, either at common law, or under our statutes, pass by the sale and delivery of a promissory note. The legal title to the conditional estate, granted by the mortgage, remained in the mortgagee as fully after the transfer of the note as before.  True, he may have held it as a trustee, in part, for the benefit of Swartz; but a trust of this kind, not apparent on the face of the mortgage deed, evidenced by no record, and unknown to the world, cannot affect the rights of a *bona fide* purchaser, who, in ignorance of its existence, confides in the acts of the mortgagee falling within the apparent scope of his powers as the legal owner of the mortgage.  As against such parties, the discharge must operate to cancel the record of the mortgage, and thereby extinguish its lien.  The equities of a *bona fide* purchaser, in such a case, are certainly as strong as those which arise from a latent trust, and when they are

accompanied by the legal title, must, for that reason, prevail. But the parties here are not equally faultless, and do not stand *in equali jure.* Swartz negligently or confidingly permitted Little, the mortgagee, to retain the legal title conveyed by the mortgage, and the power of control over it. Little had thus the legal power, and, ostensibly, a perfect right to discharge and release it. Leist, the purchaser, having no reason to suspect fraud, was justified in regarding the release legally made, by one who was ostensibly the proper party, as an effectual discharge of the lien; and, as between these parties, he who unwisely reposed confidence in Little, and gave him the power to defraud, should suffer the consequences."

In *Ogle v. Turpin, supra,* the rule is stated in this language: "Where a mortgagee, after an assignment of the notes secured by his mortgage, acquires the equity of redemption, and enters a formal release of the mortgage upon the record, a party taking the mortgage from him upon the same premises, without notice of the assignment of the notes, will acquire a lien superior to that of the holder of the assigned notes. There being no presumption of law that the payee of notes secured by mortgage has transferred the same before purchasing the equity of redemption from the mortgagor, a person taking a mortgage from the payee will not be held chargeable with the notice that the notes secured in the first mortgage have been assigned, but he may rely upon the record as showing title in his mortgagor."

The rule which we adopt does not conflict with the opinions of this court in *Studebaker v. McCargur,* 20 Neb., 500, and *Daniels v. Densmore,* 32 Neb., 40. In the first case it was merely decided that the assignment of one of several notes secured by the same mortgage, without any assignment of the mortgage, is an assignment *pro tanto* of the mortgage. In the second case it was held that the party to whom the note is transferred, on being paid the

48

amount due thereon, may be required to acknowledge satisfaction of the mortgage of record, and that the mortgagee, after he has transferred the debt, cannot release the mortgage so as to defeat the rights of the holder of the debt. We find no fault with these decisions; but it is obvious that the rights of a *bona fide* purchaser of mortgaged property, who became such subsequent to the release of the lien of the mortgage by the mortgagee after he had transferred the note given as evidence of the debt, was not involved or passed upon in either of the cases to which reference has just been made.    Conceding then, as plaintiff contends, and his evidence tends to establish, that the release of the mortgage in the case under consideration was not deposited in escrow, but was wrongfully placed upon record by the mortgagee, without the knowledge or consent of the plaintiff, the lien created by the mortgage was not canceled as against the mortgagors nor as against Wright, their vendor, since, as we have already seen, the former had not paid the debt, and the latter was not a good faith purchaser of the property and without notice.

There is another ground upon which an affirmance of the judgment may be properly placed, and that is plaintiff has not been damaged by reason of the release of the mortgage.    Stated differently, owing to the low value of the premises, the mortgage was no security for the payment of the notes owned and held by plaintiff.    The different witnesses examined at the trial do not agree in their estimates of the value of the property.    Those given by plaintiff's witnesses vary from $14,000 to $18,000, while defendant's witnesses fixed the value from $5,300 to $7,500.    As a reviewing court, we must accept as the correct value of the property the amount as stated by the persons who testified in favor of the successful party in the lower court.    As stated above, the highest estimate of value named by any witness on that side of the case was $7,500.    There was an unpaid first, or prior, mortgage on this real estate for the

sum of $5,000, besides interest, and the total amount of the notes secured by the mortgage in controversy, maturing before the notes held by plaintiff, was $2,600.    Thus, it will be observed, the amount of the liens upon the property, exclusive of interest, was $7,600, which amount would have to be paid out of the proceeds arising from the sale of the property before anything could be applied on the notes held by plaintiff, unless all the notes secured by the second mortgage should be paid *pro rata*.    It is the established doctrine of this state that where several notes secured by the same mortgage are sold to different parties without any accompanying assignment of the mortgage, the several holders are entitled to share *pro rata* in the proceeds arising from the sale of the mortgaged property. (*Studebaker v. McCargur*, 20 Neb., 500; *Harman v. Barhydt*, 20 Neb.,625; *Todd v. Cremer*, 36 Neb., 430.)    A different rule, however, prevails in the state of Iowa, where the mortgage in question was executed and where the real estate therein described is situated.    In that state it has been held by repeated decisions of its highest court that the transfer of one of several notes, maturing at different times and included in the same mortgage, operates as an assignment *pro tanto* of the mortgage, and that the proceeds arising from the foreclosure of the mortgaged premises must be applied first to the payment of the note first falling due, and then to the discharge of the other notes in the order of time in which they mature. (*Rankin v. Major*, 9 Ia., 297 ; *Grapengether v. Fejervary*, 9 Ia., 163; *Walker v. Schreiber*, 47 Ia., 529.)    It is perfectly plain, if the latter rule shall control our decision in this case, that plaintiff has not been injured by a discharge of the mortgage, while a different result will be reached should the rule of our own state be adhered to in this case. The question therefore presented is which of the conflicting rules should be applied in determining the rights of the parties.    If the lands covered by the mortgage were situate here, unquestionably our former decisions would

be followed. In a recent case this court, in an opinion written by Judge HARRISON in *Riley v. Burroughs*, 41 Neb., 296, held that in an action upon a covenant of warranty against incumbrances, where the conveyance is executed in this state for land situate in the state of Iowa, the law of the state in which the land is located will govern the rights of the parties in the enforcement of the covenant. The principle announced in the precedent just referred to is certainly decisive of the point under consideration. There is stronger reason why the law of Iowa, rather than our own, should govern in the construction of this mortgage, since not only is the land located in that state, but Iowa is the place where the contract or mortgage was executed. We feel constrained to hold that the construction of the mortgage and the rights of the parties thereunder are governed by the law of Iowa, and that plaintiff has suffered no damage by reason of the discharge of record of the mortgage. The judgment is

AFFIRMED.