Gantt, J.
It appears that the plaintiff, Miller, and the defendant, Mills, owned as tenants in common, the west thirty-four feet of lot seven, in block one hundred and twenty, in Omaha city; that in a partition suit between the parties, after the proper proceedings were had, it was ordered by the court that this property be sold. The same was sold to one George T. Mills, which sale was confirmed at the February term, 1874, of the district court, and a deed ordered to be made to the purchaser. At this term of the court an order was. made appointing a master to ascertain and report, what incumbrance, if any, existed on the property sold, and also to take an account of the rents and profits received by defendant, Mills, and expenditures made by him for taxes and necessary repairs *365 upon the premises, since the day an account was taken by a former master, up to the day of the confirmation of sale, and also to take and report the testimony together with his findings thereon to the court.
It appears by the record that the period for which the account was taken, extended from April 1,1872, to February 23, 1874. The master made a report, to which exceptions were filed by defendant; two exceptions were sustained, and two others overruled; and thereupon the case was referred back to the master to ascertain whether a mortgage upon the property held by E. Creighton was an individual debt of plaintiff, whether the defendant-had any interest in the mortgage debt, and which of the parties should remove the incumbrance; and secondly, to ascertain the amount of taxes, with interest thereon, embraced in certain tax deeds and certificates.
The supplemental report was filed. The master finds that the defendant had received and is chargeable with rents, amounting in the aggregate to the sum of$3753.92; that he had paid for taxes and repairs, amounting in the aggregate to the'sum of $574.46, which last sum deducted from the former leaves the sum of $3179.46; that for one-half of this last sum, to-wit: $1589.73, the defendant should account to the plaintiff. The defendant excepted to the report and findings of the master, and asked that the report be set aside. The exceptions were overruled, and the report and findings were confirmed. And the same is brought to this court upon appeal.
It appears by the proofs taken on the part of the defendant, that J. S. McCormick, the son-in-law of defendant, holds two tax deeds on the property, in question, one whereof bears date, March 12, 1872, and the other September 27, 1872, both made upon purchases at private sale, on the tenth day of March, 1870;. and that he also holds a treasurer’s tax certificate of sale upon the same premises, dated December 9,1872. Now, as to the *366 main ground of defense, it is insisted on the part of defendant, that McCormick, by virtue of these tax deeds, and certificate of sale, acquired rights in the property, and collected a portion of the rents, to which the defendant submitted, and therefore he ought not to be charged with these rents.
In the discussion of this proposition, it may perhaps only be necessary to inquire, under what circumstances, and for what purpose McCormick obtained these alleged muniments of title to the property in question. The proofs manifestly show that they were obtained under private sales, and that the defendant himself was an active agent in procuring them. Sometime prior to the first sale to McCormick, the defendant made application to the county treasurer for a statement of the amount of taxes due on the premises; and the witness, E. O. McShane, testifies that he was county treasurer from November 18, 1871, until November 8, 1873; that soon after he came into the office of treasurer, the defendant twice bid off the property in question, once in the name of George T. Mills, his son, and once in the name of J. S. McCormick; and that he did not have or receive from McCormick any application for the purchase of the premises. We think the proofs fully sustain the finding of the master, that whatever rents were paid to McCormick was done “ by consent and direction of the defendant,” and that defendant “had control of the rents and profits of said property.”
But, may not the key to all these transactions between defendant and McCormick, be found in the defendant’s answer to the sixth interrogatory propounded to him in his examination in chief ? lie says that because the plaintiff refused to account for one-half of the money he, defendant, paid for Merritt’s title to the property, and to provide for back taxes, “ I wanted to give the store and any rights I had therein to McCormick. He then *367 inquired how much back taxes there were — I told him to go to the office and ascertain for himself and seetm the title from the county, and he might have the property for half what it cost me. In accordance with that understanding he obtained his deed. * * * The store was originally bought for my son George, — McCormick to deal fairly and justly with George and render unto him what was his due.”
It seems very clear, according to the ordinary and familiar signification of the words used by the defendant, that the only true interpretation of his language is this: That because the plaintiff refused to do certain things demanded by him, he made an arrangement with McCormick to secure from the county a tax title to the property, and by doing so “ he might have the property for half what it cost” defendant; but that, as it was originally bought for defendant’s son George, McCormick was to deal fairly and justly with George, and render unto him what was his due. In the language of the defendant “ in accordance with that understanding” McCormick obtained his deed. Hence, if the language used means anything, it must mean that, after the tax title was procured, McCormick, might have the property by paying to defendant one-half what it cost him and by rendering to his son George what was his due; and as he does not state what portion was to go to his son George, it may as well be understood to be one-half, or any other part of it.
"Was it in pursuance of this “understanding” that the defendant made application to the county treasurer for a statement of the delinquent tax upon the property? "Was it for the purpose of carrying into effect this arrangement or “understanding,” that the defendant, in December, 1872, at a tax sale, purchased the premises in the name of McCormick, and took the certificate of sale in his name? It seems probable that such *368 proceedings would naturally follow such an “ understanding.”
But, does not this whole transaction bear upon its face a manifest contrivance on the part of defendant to defeat and destroy the title of his co-tenant to the property?
We are very clear in our opinion that he cannot by any such “understanding” or contrivance overthrow the title or impair the rights of his co-tenant, and thereby escape his liability to account to the plaintiff for the rents and profits of the premises. This view of the case, which we think is well sustained by the proofs, might be deemed a sufficient answer to the exceptions taken by defendant to the findings of the master; but one other point in the defense demands some notice.
It is urged that the master erred in charging the defendant for rent of the second story of the store house on the premises. The exception is based on the ground that this part of the premises remained vacant. But how is the fact ? The proofs show that the defendant and J. S. McCormick occupied this apartment, if not all the time, at least most of the time for which the account was. taken; and it further appears in evidence that at one time, the defendant refused a monthly rent of forty dollars offered for this second story to be used as a photographic gallery.
Therefore, under the circumstances and facts shown by the jn-oofs, and especially in view of the fact that the defendant failed to render any account for rents of this apartment, we think the master properly received evidence of its rental value during the term for which the account was taken, and properly charged the defendant with such rent.
Upon a careful examination of the proofs taken in the cause, -we fail to discover any good reason for setting aside the master’s report as amended by his supplemental *369 report, and therefore its confirmation and the decree of the court below should be affirmed.
Decree affirmed.