BRIDGES & WHITE, APPELLEES, V. OTTO BIDWELL ET AL., APPELLANTS.

1. **Conveyance by Father to Son:** TRUSTS. Where a father had certain real estate conveyed to his minor son without consideration, and received a note secured by mortgage on said real estate from said son, which note and mortgage he afterwards assigned as collateral security for a debt, the son as against creditors of the father is a mere trustee of such property and cannot plead his minority to defeat the mortgage.

2. **Principal and Agent.** An agent who purchases property without disclosing the name of his principal is personally liable.

3. **Mortgage:** ASSIGNMENT: CONVEYANCE BY MORTGAGOR. Where a mortgage upon certain real estate was duly executed and recorded, and afterwards assigned, but the assignment not recorded, a subsequent deed by the mortgagor and mortgagee will not discharge the mortgage in the hands of a *bona fide* holder, the mortgage remaining on the record unsatisfied.

4. **Duress.** *Held,* That the proof fails to show duress or that the real estate was purchased with the money of the wife.

APPEAL from Johnson county district court. BROADY, J.

*Appelget & Son* and *S. P. Davidson,* for appellants.

A gift by a debtor to his son, prior to insolvency, is not fraudulent as to subsequent creditors. *Hinde's Lessee v.*

*Longworth,* 11 Wheat., 200.  *Sexton v. Wheaton,* 8 Wheat., 229.   It will be considered as an advancement.  *Vanzant v. Davies,* 6 Ohio St., 52.

*Field & Harrison,* for appellees.

Infancy cannot be used as a protection for fraud.  Tyler, Inf. & Cov., p. 140, § 94.   *Elliott v. Horn,* 10 Ala., 348, 353.

MAXWELL, CH. J.

This is an action to foreclose a mortgage on real estate. The plaintiffs allege in their petition that Otto Bidwell and Clara Bidwell are partners under the name of Bidwell & Brother; that Henry E. Bidwell and Mary Bidwell are the father and mother of said Clara and Otto Bidwell; that during and prior to the year 1884, Bidwell Bro. carried on business in Sterling, Nebraska.

On October 1st Bidwell & Bro. were indebted to Bridges & White for flour furnished in the sum of $1,121.13, and on said day executed and delivered to Bridges & White their promissory note for said sum, due in ninety days from date, signed Bidwell & Bro.

At the same time, as collateral security for said note of $1,121.13, said Bidwell & Bro. endorsed and transferred to Bridges & White a note of $2,500, executed by Otto Bidwell to Henry E. Bidwell, and secured by a real estate mortgage on the west one-half of lot five in block fourteen in the town of Sterling, Neb., and assigned to Bridges & White the said mortgage.   Said mortgage was duly recorded.

On April 15, 1885, Henry E. Bidwell paid Bridges & White $287.28, which sum was endorsed as paid on said note of $1,121.13.

The said Bidwell & Bro., failing to pay the balance due upon their note of $1,121.13, the plaintiffs demanded payment of the interest due upon their collateral note and

mortgage of $2,500 when the same became due, and payment was refused. By the terms of said mortgage the whole sum of said mortgage became due and payable. This action was brought to foreclose the said collateral mortgage. The said Otto Bidwell being a minor, the plaintiffs asked for a guardian *ad litem* to be appointed by the court, and the court appointed A. M. Appelget such guardian.

The defendant, Nicholas F. Hitchcock, procured from the Bidwells, Henry E., Mary, Clara, and Otto, a deed to the premises above mortgaged long after the execution and recording of said mortgages and claims to hold said premises as against said mortgage. The plaintiff asks for a decree of foreclosure against said premises for the balance due upon their note, and setting aside the claim of Hitchcock as to them.

On the 23d day of November, 1885, the defendant, Otto Bidwell, by his guardian *ad litem*, filed his answer and cross bill, stating that at the time of the execution of the said notes and mortgages set forth in the petition of the plaintiffs the said Otto Bidwell was and still is an infant under the age of twenty-one years, that in 1884 he was eighteen years of age.

That on the 27th day of March, 1885, he, being the owner of the premises described in mortgage in plaintiff's petition, executed and delivered to N. F. Hitchcock his deed to said premises; that at said time the said Otto Bidwell was an infant; that repeatedly since the execution of said deed he has renounced, rescinded, and disaffirmed the said contract created by said deed, and now again revokes and disaffirms the same..

The said Otto Bidwell asks that the note and mortgage of the plaintiffs be declared null and void, and that the deed to said Hitchcock be set aside and cancelled as null and void, and that he recover costs.

On the 30th day of November, 1885, the plaintiffs filed their reply and answer to cross-petition of Otto Bidwell, by

his guardian *ad litem*, setting forth that they admit said Otto Bidwell was an infant at the time of the execution of said notes and mortgage.

That plaintiffs for the past three years have been engaged in the manufacture and sale of flour and feed, and doing a general milling business in the state of Nebraska. Between the 1st day of April, 1884, and the 1st day of October, 1884, these plaintiffs sold and delivered to Henry E. Bidwell, defendant, goods and merchandise to the amount of $1,700. The terms of sale of all the goods delivered to said Bidwell were cash at thirty days from delivery. The defendant, Henry E. Bidwell, failed to meet his payments as agreed, so that upon Oct. 1st, 1884, he was indebted to to these plaintiffs in the sum of $1,112.13. Plaintiffs demanded payment of said sum from Henry E. Bidwell, who informed plaintiffs that he could not pay at that time, but would give the plaintiffs ample and good security in consideration of the plaintiffs giving said Bidwell an extension for ninety days. Plaintiffs agreed to the extension for the consideration of obtaining good security for their debt.

Defendant Henry E. Bidwell then made and executed the note for $1,121.13 set forth in plaintiffs' petition, and delivered the same to these plaintiffs. Said Henry E. Bidwell at this same time delivered to the plaintiffs the note of $2,500, executed by Otto Bidwell to said Henry E. Bidwell, and the mortgage given to secure said $2,500 note, the note and mortgage being fully set forth in plaintiffs' petition. Said $2,500 note and mortgage was given by said Henry E. Bidwell as security for the payment of the $1,121.13 note above mentioned. Said note of $1,121.13 becoming due, these plaintiffs demanded payment from Henry E. Bidwell, who gave to said plaintiffs a written order directed to one Thomas Lowrey to pay any sum of money that might be due and owing the said Henry E. Bidwell upon a certain corn contract. Said Lowrey accepted said order and paid to said plaintiffs, to apply upon

their said note, the sum of $287.28, which amount was endorsed upon said note. Plaintiffs still demanding payment from the said Henry E. Bidwell of the balance due upon said note, were informed by Henry E. Bidwell that the Bidwell Bro. whose signature was attached to said note, and which said signature was made by the said Henry E. Bidwell, was the signature of a firm composed of his son and daughter.

Upon the maturing of the interest due upon the $2,500 note and mortgage, the plaintiffs demanded payment at the place of payment, and the same was refused. The said Henry E. Bidwell then informed the plaintiffs that said $2,500 note and mortgage were of no value, as the same had been given by his son when a minor.

Plaintiffs allege that Henry E. Bidwell purchased from one A. S. Ellis the premises mentioned in the said mortgage, and that the said Henry E. Bidwell paid the full consideration to said Ellis for said property, and caused the said Ellis to execute a deed to his son, Otto Bidwell, for the sole and only purpose of placing said property out of the reach of the creditors of himself, and for the purpose of hindering and delaying his creditors in the collection of their just claims. The said Otto Bidwell never paid any part of the consideration for said premises, and never had any further or other interest in said premises, except the naked title as above set forth placed in his name by his father for the purpose already mentioned; that the defendant Hitchcock took his deed to said premises with a full knowledge of all the above facts.

The said Henry E. Bidwell caused his son, Otto Bidwell, to execute the $2,500 note and mortgage on the property, really owned by said Henry E. Bidwell, and Henry E. Bidwell assigned said note and mortgage to secure a just debt due the plaintiffs from said Henry E. Bidwell. Plaintiffs ask that the court will decree that said Otto Bidwell holds said premises in trust for the creditors

of Henry E. Bidwell.   That said Henry E. Bidwell is the real owner, and that plaintiffs have a first lien upon said premises, by virtue of their mortgage and facts above set forth, for the full amount of their claim, with costs and interest."

Afterwards, and on January 19, 1886, the defendant Hitchcock filed his answer and cross-petition, setting forth "that one A. S. Ellis was the original owner of the premises described in the petition of plaintiff, and for full value sold the same to Henry E. Bidwell and Mary Bidwell, and at their request conveyed said premises to Otto Bidwell.   Afterwards, and on March 27, 1885, Henry E. Bidwell, Mary Bidwell, Otto Bidwell, and Clara Bidwell conveyed said premises for full value to this defendant N. F. Hitchcock, by a good and sufficient warranty deed, covenanting that said premises were free and clear of all incumbrances, and said deed was thereby filed for record, March 30, 1885." Defendant further answers, "That at the time of said conveyance to Otto Bidwell he did not know that said conveyance was made to him for fraudulent purposes, and his conveyance to this defendant was for full value and in good faith.   This defendant avers the fact to be that said conveyance to Otto Bidwell was made to defraud the creditors of Henry E. Bidwell, and that at the date of the conveyance of said Henry E. Bidwell and others to this defendant, the said Henry E. Bidwell was the true owner of said premises.   The said Hitchcock further avers that at the time of the execution of the notes and mortgages to the plaintiffs, the said Otto Bidwell was an infant, and has repeatedly disaffirmed said acts, and the same are void, and that the debts for which said mortgage was given have been fully paid.   Defendant asks that the said mortgage be declared invalid, and the cloud upon the title to said premises caused by the said mortgage be removed, and for costs."

Afterwards the plaintiffs, Bridges & White, filed their

reply and answer to the above answer and cross-petition of N. F. Hitchcock, which need not be noticed.

To this answer of the plaintiffs to defendant Hitchcock's cross-petition, the said Hitchcock files a general denial as a reply ; and to the answer and cross-petition of defendant Hitchcock, the defendant Otto Bidwell by his guardian answers, admitting the execution of deed to Hitchcock; alleges that at said time the defendant, Otto Bidwell, was an infant, and disaffirms said act; alleges that said deed was made under duress and without consideration; denies that said property was purchased with moneys belonging to Henry E. Bidwell, and alleges the facts to be that the mother of defendant furnished said money.

Afterwards Hitchcock replied to the above answer, denying each and every allegation therein contained.

On the trial of the cause Charles C. White testified: Am one of the firm of Bridges & White, doing milling business; became acquainted with Henry E. Bidwell, March, 1884, and the rest of the family afterwards; received note of $1,121.13, signed Bidwell & Bro., from Henry E. Bidwell, who signed the note himself. This note was given for a balance due us for flour. I received at the same time the note of Otto Bidwell to Henry E. Bidwell for $2,500 and the mortgage given to secure the same. Henry E. Bidwell endorsed the note and assigned the mortgage to Bridges & White, signing the firm name of Bidwell & Bro. The $2,500 note and mortgage were given as collateral security for the note $1,121.13 given for flour ; we received upon the $1,121.13 note $287.28, April 15, 1885; the balance of said note is due and unpaid. This payment was made by Henry E. Bidwell, who had sold corn to Thomas W. Lowrey, of Lincoln. He gave us an order on said Lowrey for any sum that might be due him upon said corn contract, and upon this order Lowrey paid us the sum of $287.28. Our first dealings with Henry

E. Bidwell, or with Bidwell & Bro., was the shipment of car of flour, April 21, 1884.   We received the order about two weeks prior thereto.   During all our transactions the correspondence was carried on, on the part of the Bidwells, by Henry E. Bidwell.   He signed the firm name of Bidwell & Bro.   I visited Sterling, sold flour, and in all my talks I met no one but Henry E. Bidwell.   In all the selling of merchandise I never had a suspicion but that the Bidwell with whom I conversed was one of the brothers. He did all the business, signed the firm name, made every signature that was made.   I had no business with any one else.   Afterwards I learned he claimed not to belong to the firm.

Plaintiffs offered in evidence exhibit "A," being note from Bidwell & Bro. to Bridges & White, given for merchandise, for the sum of $1,121.13, dated October 1, 1884, payable ninety days after date, upon which appeared an indorsement of $287.28.   Also exhibit "B," being note for $2,500, from Otto Bidwell to Henry E. Bidwell, dated Sterling, Neb., April 14, 1884, and payable on or before five years from date, interest payable annually at rate of ten per cent per annum, payable at bank of Sterling, Sterling, Nebraska, note endorsed Henry E. Bidwell.   This note was given as collateral security for the note of $1,121.13.   Also exhibit "C," being mortgage on west half lot five in block fourteen, town of Sterling, Nebraska, from Otto Bidwell to Henry E. Bidwell, given to secure the $2,500 note above set forth and mortgage, dated April 14, 1884, assigned May 13, 1884, from Henry E. Bidwell to bank of Sterling; May 21, 1884, from bank of Sterling to Bidwell & Bro., and October 1, 1884, from Bidwell & Bro. to Bridges & White.

He also testified that he demanded payment of the interest due upon said collateral note and mortgage at place of payment when the same became due, and payment was refused.

Plaintiffs offered abstract showing title to premises set forth in his petition.

L. A. Varner testified: Have been engaged in law business at Sterling for four years; Henry E. Bidwell and Otto Bidwell and A. S. Ellis drew a contract between Ellis and Henry E. Bidwell. [Plaintiff showed loss of contract.] Contract was for purchase by Henry E. Bidwell from Ellis of premises in dispute. Henry E. Bidwell employed me to write contract; Otto Bidwell was not present; I had never met him at that time. Contract provided for the execution of a deed from Ellis to Henry E. Bidwell upon certain payments being made by Henry E. Bidwell. At the time Henry E. Bidwell and A. S. Ellis came to have deed made to this property, Henry E. Bidwell said to me that I might make the deed out to Otto's name—he called him Otty—said he was going to let him have the property, said it was all satisfactory to Ellis. Ellis was there and said, all right, he did not care who he made the deed to. I executed the deed and it was by their request—Henry E. Bidwell and A. S. Ellis' request; left it in the Johnson county bank until Henry E. Bidwell should pay off this claim, whatever balance that was due, and then the deed was to be delivered. Otto was not present.

N. F. Hitchcock testified: I am a defendant and proprietor of the Johnson county bank. At the time Bidwell purchased this property, I held a mortgage on it for $960, which Bidwell assumed. Shortly after the purchase of this property from Ellis, the deed was executed and papers brought into the bank by Ellis and Bidwell and left with me, with the instructions to deliver the deed to Mr. Bidwell when Bidwell paid the mortgage that was due, and also the $1,800 for Mr. Ellis, the balance that was yet due Ellis. When I say Bidwell I mean Henry E.; the boy's name is Otto and the girl's name is Clara. Some time in May thereafter Mr. Bidwell paid, or I gave him credit as having paid, the $960 mortgage, being the mortgage Bidwell assumed from Ellis to me.

13

Soon after, Ellis wrote for his money, and Bidwell came to me and said he was soon to ship his cattle, and asked me to pay Ellis what he required, as the cattle would be shipped in my name. I did pay Ellis, and delivered to Bidwell his deed and gave him a release of the mortgage he had assumed to the Johnson county bank. Upon receiving the returns of the cattle, I charged the amount so paid to Henry E. Bidwell, and retained the money from proceeds of cattle of Henry E. Bidwell.

The deed executed by Mary E. Bidwell, Henry E. Bidwell, Otto Bidwell, and Clara Bidwell to defendant Hitchcock for the real estate controversy is dated March 27th, 1885, and was filed for record March 30th of that year. On the trial of the cause the court below rendered a decree of foreclosure for the sum of $985.28 in favor of the plaintiffs, and, subject to said decree, judgment in favor of Hitchcock for the premises in question.

The first question for determination is the validity of the note and mortgage executed by Otto Bidwell to Henry E. Bidwell.

It is apparent that Otto Bidwell paid nothing whatever for the property, and as against creditors of Henry E. Bidwell held it as a naked trustee. Henry E. Bidwell had the property placed in the name of his minor son. He then took a mortgage on such property from his son, and himself gave such mortgage as collateral security for the amount due the plaintiffs. The property in fact belonged to Henry E. Bidwell, though held by another, and a mere power to convey real estate is not regarded in law as a contract; therefore it is not necessary that the donee of the power should be capable of contracting. *Weisbrod v. The C. & N. W. Ry. Co.*, 18 Wis., 35. *McMurtry v. Brown*, 6 Neb., 368. Otto Bidwell being a mere trustee of the legal title to the property in question, could convey the same in execution of the trust, and, having done so, neither he nor his father can plead his infancy to invalidate the deed.

2. The name of the purported firm, it appears, was Bidwell & *Brother*, although, if the testimony of Henry E. Bidwell is to be believed, the firm consisted of his minor son and a daughter. Henry E. Bidwell transacted all the business, and evidently intended creditors to understand that himself and a brother not present constituted the firm. If he was acting merely as agent of his minor son and his daughter he should have so informed parties of whom he desired to purchase goods. Good faith and fair dealing require a party who does not intend to render himself personally liable by a purchase that he shall inform his vendor from whom he is purchasing. An agent is liable if he conceals his character as agent. *Franklyn v. Lamond*, 4 C. B., 637. *Evans v. Evans*, 3 A. & E., 132. *Thompson v. Davenport*, 9 B. & C., 78. *Owen v. Gooch*, 2 Esp., 567. *Raymond v. Pro. of C. & E. Mills*, 2 Met., 319. *Winsor v. Griggs*, 5 Cush., 210. *Tuintor v. Prendergast*, 3 Hill, 72. And the same rule prevails where he so conducts the business as to render his principal inaccessible or irresponsible. *Fenn v. Harrison*, 3 T. R., 761. *Savage v. Rix*, 9 N. H., 263. *Sydnor v. Hurd*, 8 Tex., 98. *Keener v. Harrod*, 2 Md., 63. These principles were applied to a member of an alleged corporation in *Abbott v. Omaha Smelting Co.*, 4 Neb., 416. Henry E. Bidwell, therefore, in failing to disclose the names of his alleged principals, rendered himself personally liable for contracts made by him.

3. The priority of the mortgage over the deed to Hitchcock. The mortgage in question had been executed and recorded nearly a year before Mr. Hitchcock received his deed. The mortgage was still on record and unsatisfied. Of this the record contained full notice to all parties. Mr. Hitchcock claims that he had no notice of the assignment. This may be true, and still the plaintiffs' equities will be superior to his, and with the mortgage unsatisfied on the record he could not, as against innocent third parties, take the property divested of the lien:

4.   We find no such duress in the execution of the deed as would justify a court in setting it aside.

5.   That the purchase money of· the house was derived from the estate of the wife.   This may be so, but the court below must have found against the claim, and under the circumstances disclosed by the testimony we cannot say that the finding is erroneous.   There is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.