JOSEPH J. MULLIGAN, APPELLEE, V. IRA C. SNAVELY ET AL.,
APPELLEES: THOMAS WOLFE, APPELLANT: DAVID
G. WINE ET AL., CROSS-APPELLANTS.

FILED JANUARY 10, 1929.   No. 25774.

*Roper & Fuller*, for appellant.

*Meeker & Anderson, T. B. Dysart, Scott & Scott* and *Cordeal, Colfer & Russell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This case was originally presented to Commission No. 1, an opinion written and adopted by this court, affirming the judgment of the court below; a motion for rehearing was filed and arguments heard thereon by the court. The same will now be disposed of. The action is to foreclose a mortgage upon lands, and the only question presented is the priority of liens.

The plaintiff, Joseph J. Mulligan, is the assignee of a mortgage originally executed by Ira C. Snavely and wife to the Peters Trust Company of Omaha, for the sum of $10,000, upon 1,200 acres of land, dated August 1, 1918, and recorded August 7, 1918, at 9 o'clock a. m., upon the records of Chase county, where the land was situated.

The defendant Thomas Wolfe filed a cross-petition seeking foreclosure of a mortgage dated March 1, 1918, and recorded the same day, for $18,000, executed by the Snave-

lys to one David G. Wine, the note which it secured having been indorsed by said Wine to Wolfe about the day of its date, as collateral security for certain indebtedness of Wine to Wolfe. It was agreed that an assignment of the mortgage should be executed and filed for record by Wine for Wolfe, but this was never done. The defendants David G. Wine and Farmers & Merchants Bank of Imperial filed a joint answer and cross-petition seeking the foreclosure of a mortgage for $17,636.75, executed January 5, 1921, by the Snavelys to Wine, which, with the note it secured, were held by the bank as collateral security for an indebtedness of Wine. It was alleged that Wine's debt to Wolfe and the $18,000 mortgage had been fully paid, and Wine and the bank claim a lien second only to that of the Peters mortgage. The defendant Harley G. Humphrey purchased a part of the lands from the Snavelys subject to a portion of the Peters mortgage, which he agreed to pay, and filed his answer and cross-petition asking that the remaining lands not covered by his deed be first exhausted to pay the prior liens. The allegations of the several answers and cross-petitions are put in issue by replies. The decree of the district court established the Peters mortgage as a first lien, the $18,000 mortgage as a second lien, in favor of Wolfe, except as to the Humphrey lands, and the Wine mortgage for $17,636.75, a third lien in favor of the bank. Wolfe appeals, and Wine, the bank and the Humphreys file cross-appeals.

The fruitful cause of the litigation involved was the failure of Wolfe to obtain an assignment of the $18,000 mortgage and file the same for record, whereby it was made possible for the Peters Trust Company to make the loan secured by its mortgage, the circumstances of which we will now relate. Early in July negotiations were instituted by Snavely and Wine to procure a loan of $10,000 from the Peters Trust Company on the lands covered by the $18,000 mortgage, which culminated, August 1, 1918, in the execution of the note and mortgage of the plaintiff. Wolfe had knowledge of these negotiations, and there is

written evidence in a letter signed by Wolfe tending to prove that Wine had Wolfe's authority to collect the $18,000 mortgage. The transaction was carried out and completed in the customary manner with loan companies as follows: The note and mortgage were executed by the Snavelys to the trust company August 1, 1918, and were sent to Chase county for record, and recorded at 9 o'clock a. m. August 7. At the same hour and date a release of the $18,000 mortgage was recorded, executed by David G. Wine, the record holder thereof. There was no subscribing witness to this release at the place upon the instrument provided therefor, but it was properly acknowledged before a notary public who testified that Wine executed the same in his presence. The evidence does not establish which one of these documents was actually first filed for record, but at the top of the release appears in pencil the figure "1," and at the top of the mortgage the figure "2," which is the customary method by the recording officer of indicating the order of filing. The abstract was then extended to show these filings, and submitted to the plaintiff which approved the same, and thereafter the money was paid to the mortgagor Snavely or his order. It seems that $5,080 was paid to Wine on account of the $18,000 mortgage, the application of the remainder not shown.

Upon this state of facts, the plaintiff takes the position that it relied upon the recorded release of the $18,000 mortgage, having no notice of the fact that the note secured thereby had been assigned to Wolfe, and that therefore it was an innocent mortgagee and entitled to priority.

On the other hand, defendant Wolfe contends that, because the release did not have a subscribing witness as required by statute, it was not entitled to record, and therefore did not impart constructive notice upon which plaintiff might rely. To this plaintiff replies (1) that the instrument in question did not require a witness under the statute, and (2), if it did so require, that the signature of the notary to the acknowledgment, coupled with the fact that the instrument was executed by Wine in his presence,

was a sufficient compliance as to witnessing; (3) "any irregularities in the execution, which was actually recorded, would not be known by those relying on the record until the record was inspected and then the instrument, as actually recorded, would be actual notice of its existence to the person who saw the record."

These questions—the necessity for witness, the sufficiency of the notary's signature, whether the instrument was entitled to record, and whether it imparted constructive notice—are exceedingly interesting and are learnedly and exhaustively discussed in the briefs, the major portions of which are devoted to that purpose; but after the most careful consideration we are convinced that their decision is not requisite to a proper disposition of the case, which presents a state of facts involving not constructive, but actual, notice.

The object of recording instruments affecting real estate is to secure a permanent record of the title and provide a place where persons dealing with the property may inform themselves as to the condition of the title. The record, when regularly made, is constructive notice to the world of what it contains. All persons dealing with the land are conclusively presumed to have knowledge of it and are bound thereby. The purpose of the record, so far as third persons are concerned, is to give notice to those who have it not. Persons who have knowledge of the facts disclosed by the record are bound by their knowledge, and the constructive notice by record adds nothing and is immaterial. "Actual knowledge of the existence of a real estate mortgage is as binding as constructive notice thereof." *Bradford v. Anderson,* 60 Neb. 368. Where a grantee reads a deed, he has actual, not constructive, notice of its contents. *Jones v. Woodward,* 50 Okla. 704.

So far as the question of notice is concerned, it seems to be conceded that, if the release in question was entitled to record so as to impart constructive notice, plaintiff would have been protected thereby, as distinctly held in *Whipple v. Fowler,* 41 Neb. 675. But it is contended by

defendant, supported by reasoning which to us is not persuasive, that, though plaintiff might rely upon a record regularly made, he is not entitled to rely to the same extent, upon the same facts appearing of record and brought to his attention in some other manner. If I purchase land with actual knowledge of the existence thereon of an unrecorded mortgage, I buy subject thereto. If I purchase land after having examined the records, and having found recorded therein a deed from my grantor of the same lands to a third party, which deed was not properly witnessed and therefore not entitled to record, I buy subject to the rights of the prior grantee, not because of the record of the defective deed, but because of my actual knowledge of its existence derived from the record. One who actually sees the record of an instrument is bound by his knowledge thus acquired, regardless of the question whether such instrument was entitled to record.

The principles above stated are well established and are applicable to the situation of plaintiff so far as the question of record and notice are concerned. The abstract of the land in question was submitted to the plaintiff and passed upon by it before the loan was consummated by the payment of the money. That abstract showed the release in question, but erroneously stated that it was properly witnessed. Of course, plaintiff could take no benefit from the false statement in the abstract, except upon the question of his good faith. But one error did not vitiate the entire abstract, and he may rely upon it to the extent that it correctly reflects the record. In this instance it showed at least a release properly acknowledged by the apparent holder of the mortgage, and, upon examination by plaintiff's attorney or agent, imparted actual knowledge of the existence of the instrument. True, the plaintiff did not examine the record itself, but a properly exemplified copy is of equal effect. One with actual notice of a written instrument good between the parties is in no position to raise the point of defective execution, but takes subject to it.

*Russum v. Wanser,* 53 Md. 92; *Johnston v. Canby,* 29 Md. 211; *Gardner, Dexter & Co. v. Moore, Trimble & Co.,* 51 Ga. 268, holding: "A mortgage of real estate attested by but one witness is not void, and, if a subsequent mortgagee or purchaser buys or takes his mortgage with actual notice of a prior mortgage, he takes subject to it even though it have but one witness." One with actual notice is not affected by failure to record. *National Mutual Building & Loan Ass'n v. Blair,* 98 Va. 490. We are clearly of the opinion that the plaintiff had the same right to rely upon its actual knowledge of the existence of the release to the same extent that it might rely upon constructive notice furnished by an instrument regularly recorded.

Defendant Wolfe, however, makes the further contention that under no circumstances is plaintiff entitled to rely upon the release in question, executed by the mortgagee, without requiring the production of the negotiable note secured by the mortgage; that, inasmuch as the plaintiff has not brought itself within the rule of protection by the recording act, it became its duty to satisfy itself by proper inquiry that the indebtedness secured by the mortgage had been paid. He cites two cases from other states: *Northup v. Reese,* 68 Fla. 451, and *Early Co. v. Williams,* 135 Tenn. 249, but in these states an assignment of a mortgage is not required to be recorded in order to protect subsequent purchasers and mortgagees. He also cites *Griffith v. Salleng,* 54 Neb. 362. In that case it was held that a purchaser of land subject to a mortgage, who subsequently paid the mortgage debt to the mortgagee, holder of the note with negotiable coupons attached, taking a release from the mortgagee, was not protected against the assignee of prior coupons which were due but unpaid. The case of *Whipple v. Fowler,* 41 Neb. 675, was cited by the plaintiff and distinguished by the court in the following language: "That case is not at all in point. It was there held that one who bought relying on a release of a mortgage, on record and executed by the mortgagee, was protected against the mortgage although it had been assigned

to another and the original mortgagee had no right to release it. In this case Smith bought with the mortgage standing of record, unreleased, and merely assumed that, when he found the principal bond in the possession of a third person, he was safe in paying that third person, without inquiring what had become of the negotiable interest coupons." The case is authority merely for the proposition that, where a person undertakes to pay a prior incumbrance, he is bound to pay it to the right party. Also *Heintz v. Klebba*, 5 Neb. (Unof.) 289. The syllabus in that case is as follows: "One who purchases real estate incumbered by a recorded mortgage securing negotiable notes and receives along with his deed an unrecorded release of the mortgage, executed by the mortgagee after he had sold the notes and assigned the mortgage, cannot resist a foreclosure by a *bona fide* holder of the unpaid secured notes." In the opinion the case of *Whipple v. Fowler, supra,* was discussed, and, while intimating that the holding therein was upon a question not involved, conceded that the rule as announced is just and reaffirmed in many subsequent cases. The facts upon which such holding was predicated are set forth in the opinion: "We are of the opinion that where a sister mortgages real estate to her brother, who then sells the mortgage debt to a stranger and thereafter executes a release of the mortgage, and the sister afterwards conveys the mortgaged property to her parents, the burden of proof in an action by the owner of the debt to foreclose the mortgage will rest upon the parents to show that they bought and fully paid for the property without notice of the want of authority in the mortgagee to release the mortgage." And after referring to the rule in *Whipple v. Fowler, supra,* Commissioner Glanville, who wrote the opinion, remarked: "While the rule is just, we do not think it relieves the purchaser of the burden of proving that he is within the rule in a contest with the holder of the unsatisfied lien; and surely where the relationship of the parties is as shown in this case, the burden of proving good faith, and all the

elements required to bring the purchaser within the rule, is upon the appellees and they cannot prevail because plaintiff failed to prove they were not within the rule." The commissioner cited the case of *Whitney v. Lowe*, 59 Neb. 87, but in that case the release was not executed until the day following the purchase. Also *Bridges & White v. Bidwell*, 20 Neb. 185, holding that a purchaser from a mortgagee who had acquired the equity of redemption by deed from the mortgagors was not protected where the mortgage appeared unreleased and upon the record. Here the release was executed and filed before loan was paid over. Also *Mathews v. Jones*, 47 Neb. 616. A purchaser under similar conditions as in the case last cited was held not protected against a mortgage properly recorded, but in that case the deed from the mortgagor to the mortgagee contained a clause by which the grantee assumed and agreed to pay the indebtedness secured by the mortgage, which implied the continued existence of the security. While the rule announced in *Heintz v. Klebba, supra,* was proper as applied to the peculiar relationship of the parties involved, we do not think it controlling in this case.

The rule announced in *Whipple v. Fowler*, 41 Neb. 675, is as follows: "A satisfaction entered on the record by a mortgagee, after he has sold and delivered the notes secured by the mortgage to a third party, will protect a subsequent mortgagee in good faith, or *bona fide* purchaser, of the mortgaged premises, in case he had no notice at the date of the purchase, or the payment of the consideration, that the debt was assigned, or was unpaid, or that the release was unauthorized; but as to all other persons the lien of the mortgage will not be impaired." The rule as thus stated has been approved and applied in many subsequent cases, among which are the following: *Cram v. Cotrell*, 48 Neb. 646; *Cheshire Provident Institution v. Gibson*, 2 Neb. (Unof.) 392; *Columbia Nat. Bank v. Marshall*, 2 Neb. (Unof.) 790; *Perry v. Baker*, 61 Neb. 841.

A distinction must be taken between cases where the purchaser buys property incumbered by a mortgage and

subsequently attempts to pay off the incumbrance. Such were *Ames v. Miller,* 65 Neb. 204, *Eggert v. Beyer,* 43 Neb. 711, *Snell v. Margritz,* 64 Neb. 6, and *Griffith v. Salleng,* 54 Neb. 362. Or cases where the subsequent incumbrancer agrees to apply the proceeds of the lien in payment of the prior incumbrance, as in *Porter v. Ourada,* 51 Neb. 510. In such cases there is no doubt that a duty is imposed upon the purchaser or subsequent incumbrancer to pay the right party, and if he pays the mortgagor or mortgagee without securing the evidence of indebtedness he does so at his peril. In the instant case the plaintiff's mortgage was not to be subject to the prior incumbrance which, prior to the payment of the money loaned, appeared to have been released by the record owner. Much stress is laid upon the fact that the release and plaintiff's mortgage were filed for record at the same time, and it is thence argued that plaintiff could not have relied upon the release; and in this connection attention is called to the fact that the mortgage is dated August 1, at a time when the prior mortgage appeared unreleased upon the record; but this is all explained by the manner in which the transaction was closed, the money loaned not being paid over until the release was executed and filed. We have held in two cases that, where the release and deed were executed and recorded on the same day as a part of the same transaction, the purchaser was protected by the release. *Cram v. Cotrell,* 48 Neb. 646, and *Columbia Nat. Bank v. Marshall,* 2 Neb. (Unof.) 790. In the *Cram* case the rule was stated: "Where the mortgage debt has been assigned, a purchaser in good faith without notice of the assignment will be protected by a release of the mortgage executed by the original mortgagee."

In the present case no duty rested upon the plaintiff to pay off the prior incumbrance. The duty was upon the borrower to clear the property of liens so that plaintiff's lien should be first. This he did by presenting a release from the mortgagee, Wine, upon which plaintiff relied.

The defendant, conceding that he was guilty of laches

in not procuring an assignment of the mortgage and having it recorded, insists that such laches are balanced by those of the plaintiff in failing to inquire as to the ownership of the note secured by the $18,000 mortgage, and procuring it to be delivered up and canceled, and that therefore the mortgages will be enforced in the order of their respective dates. We think this question has been disposed of by our observations as to the duty of the plaintiff in that regard. However, in *Ames v. Miller*, 65 Neb. 204, where the debt had been assigned but no assignment of the mortgage recorded and the purchaser took title from the mortgagee holding both the legal title and the mortgage, so far as the record showed, it was said by Holcomb, J., at page 213: "The plaintiff (the assignee), because of his failure and neglect to record the assignment of his mortgage, has lost his right to enforce his mortgage lien on the premises described therein as against the purchaser of such real estate. This, as between the parties, gives to the purchaser the superior equity, to which we think he is entitled." In that case it was also held that an assignment of a real estate mortgage was an instrument affecting the title to real estate within the meaning of the recording acts.

We think the principle that, where one of two innocent parties must suffer a loss, he whose negligence caused the injury shall bear the loss is applicable here. *Porter v. Ourada*, 51 Neb. 510; *Deleski v. Peters Trust Co.*, 115 Neb. 547. As we have above remarked, the failure of Wolfe to procure and record an assignment afforded Wine the opportunity of defrauding plaintiff by the execution of an unauthorized release, and under the circumstances Wolfe should bear the loss. The fraud of Wine in not executing and recording the assignment cannot be charged to plaintiff.

It is contended by the plaintiff and the cross-complainants, Farmers & Merchants Bank and the Humphreys, that the debt of Wine to Wolfe has been fully paid, and evidence tending to establish that contention was introduced, as

well as evidence to the contrary. There is such a conflict in the evidence on this point that we feel justified in taking into consideration the finding of the district court, who saw the witnesses and was in much better position than the reviewing court to weigh the evidence. His finding on this point was in favor of Wolfe and will be sustained.

We conclude that the decree of the district court and the former judgment of this court are right. The motion for rehearing is overruled and the former judgment adhered to.

AFFIRMED.