### In the Matter of UNION PACKING COMPANY of OMAHA, Debtor.

#### Bankruptcy No. BK85–870.

United States Bankruptcy Court, D. Nebraska.

March 20, 1986.

Michael C. Washburn of Erickson & Sederstrom, P.C., Omaha, Neb., for moving party.

Douglas E. Quinn of Thompson, Crounse, Pieper & Quinn, Omaha, Neb., for trustee.

### MEMORANDUM OPINION RE MOTION FOR RELIEF FROM AUTOMATIC STAY

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter comes before the Court on a motion for relief from the automatic stay filed by the Omaha National Bank, Trustee. Hearing was held on November 27, 1985, with evidence received by stipulation, facts stipulated to and arguments made. The parties requested leave to file post-trial briefs. The last brief was received on February 18, 1986.

#### Facts

An involuntary petition under Chapter 7 was filed against the debtor on April 18, 1985, and relief was ordered under Chapter 7 on September 25, 1985.

The debtor is a corporation. In 1977 the debtor's name was The Purchase Company. It entered into an agreement with a corporation named Union Packing Company of Omaha whereby The Purchase Company was to acquire the assets of Union Packing

Company of Omaha. As part of the agreement, both corporations were to change their names. When the agreement closed, the corporation originally known as The Purchase Company would, according to the agreement and it did, change its name to Union Packing Company of Omaha. The seller changed its name from Union Packing Company of Omaha to Frohm Holdings, Inc.

The sale was closed and by its terms it required a payoff to the seller over a period of time. To secure the obligation from the buyer to the seller, the buyer granted the seller a security interest in the personal property and granted the seller a mortgage on the real property.

To perfect its interest in the personal property, the seller filed a financing statement in the office of the Douglas County, Nebraska, Clerk.

To perfect the mortgage, it was recorded with the appropriate Register of Deeds.

Both the financing statement and the mortgage were placed of record on December 9, 1977.

The financing statement lists the debtor as the "The Purchase Company, whose corporate name will be changed to 'Union Packing Company of Omaha'". The secured party is listed as "Union Packing Company of Omaha whose corporate name will be changed to "Frohm Holdings, Inc."

The mortgage lists the mortgagor as "The Purchase Company ... (whose corporate name will be changed to 'Union Packing Company of Omaha')." The mortgagee is referred to as "Union Packing Company of Omaha ... (whose corporate name will be changed to "Frohm Holdings, Inc.)."

The corporations changed their names but did not file amended financing statements or file any type of supplementary mortgage document to indicate the name change.

In 1980 Frohm Holdings, Inc., began a statutory dissolution. As part of the dissolution process, the Board of Directors adopted a resolution directing that all assets of the corporation be distributed to Omaha National Bank as trustee for the stockholders. Those assets included the distribution to Omaha National Bank of the purchase money note and mortgage of the debtor.

The Certificate of Dissolution of Frohm Holdings, Inc., was issued by the office of the Nebraska Secretary of State on May 15, 1981.

During the dissolution process all shares of Frohm Holdings, Inc., were canceled on the corporate books on February 28, 1981, after the resolution of the Board of Directors authorizing the distribution of the assets to the Omaha National Bank as trustee for the shareholders. Those assets, including the note and an assignment of the mortgage, had been transferred on January 15, 1981, to the Omaha National Bank, Trustee. However, the assignment of the mortgage was not recorded until August 23, 1985, and that created one of the problems in this case.

On December 27, 1983, and on January 3, 1984, another financing statement was filed in the county offices which listed the debtor as Union Packing Company of Omaha and the secured party as Frohm Holdings, Inc. The financing statement listed all of the same personal property listed on the original financing statement filed December 9, 1977.

At the time Frohm Holdings, Inc., was dissolved, there were no debts owed to anyone other than two contingent debts represented by pending lawsuits.

As of August 12, 1985, the principal balance due on the original purchase money note was $1,852,882.04. Interest accrued as of that date was $326,106.88. Total interest and principal was $2,178,988.02, with interest accruing at $926.44 per day.

The value of Union Packing Company's building, land and equipment in February, 1985, was approximately $1,000,000. The plant has been inoperative since February of 1985.

### Issues

1. Does the Omaha National Bank as trustee for the former shareholders of

Frohm Holdings, Inc., hold an interest in a validly perfected mortgage with priority over the interest of a bankruptcy trustee?

2. Does the Omaha National Bank as trustee have a perfected security interest in the personal property by virtue of the original financing statement filed in 1977 or the financing statement filed in 1983?

### Decision

The Omaha National Bank as trustee does have an interest in the real estate mortgage superior to that of the bankruptcy trustee. However, the interest of the trustee takes priority over that of the Omaha National Bank with regard to the personal property because the Omaha National Bank does not have a validly perfected security interest in the personal property.

### Discussion and Conclusions of Law

#### A. Mortgage

The position of the bankruptcy trustee with regard to the mortgage issue is that Frohm Holdings, Inc., was dissolved in May of 1981. Pursuant to Nebraska Statute 21–20,104, from and after two years following the dissolution of the corporation, neither the corporation, its officers or directors or shareholders may bring an action to enforce any claim the corporation had prior to the dissolution. In other words, the bankruptcy trustee claims that the corporation or its shareholders could have sued on the purchase money note or foreclosed on the mortgage at any time within two years after the dissolution of the corporation. However, once the two-year time period passed, and there was no assignment of the mortgage of record, no entity had the right to enforce the mortgage. Therefore, when the bankruptcy intervened, the bankruptcy trustee, with his avoiding powers does not take subject to the mortgage of record, but, instead, may ignore the mortgage of record because it is unenforceable. Apparently the bankruptcy trustee believes that a mortgage of record and the underlying debt which it secures simply vanish as a matter of law two years after the corporation is dissolved.

The problem with the position of the trustee is that the mortgage and the note were validly distributed to the Omaha National Bank as trustee for the shareholders during the corporate dissolution process. The Omaha National Bank as trustee surrendered the evidence of its ownership of the corporation by permitting the corporate shares which it held to be canceled on the books of the corporation. In consideration for such surrender, and as part of the dissolution process as authorized by the Nebraska Statutes, the Omaha National Bank as trustee received assets in kind, that is, the purchase money promissory note and the real estate mortgage securing the note.

The enforceability of the mortgage or the note is not dependent upon the rights of the Omaha National Bank representing a shareholder. The Bank's right to enforce its claim against the debtor arises due to its ownership of assets and due to the fact that the debtor defaulted under the terms of the debt instruments and their amendments and extensions after the Omaha National Bank became the owner of the note and mortgage. Prior to the dissolution of the corporation, the debt obligations were not in default. No entity could have brought an action against the debtor. Therefore, what the bankruptcy trustee wants this Court to believe is that although no entity could enforce the terms of the note or mortgage prior to the dissolution of the corporation because the debtor was not in default, any distributee of the corporation's assets was required to bring an action on the note or mortgage within two years after dissolution or somehow those distributees waived all rights to enforce the note and mortgage. This Court refuses to accept that logic.

In support of its position, the trustee cites two Nebraska cases interpreting Nebraska R.R.S. § 21–20,104. Those cases are *Russell v. First York Savings Co.*, 218 Neb. 112, 352 N.W.2d 871 (1984) and *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14 (1985). However, the *Russell*

and *Van Pelt* cases are actions between shareholders and the corporation or shareholders and shareholders to determine the rights of shareholders to assets formerly owned by the corporation. Clearly, the Nebraska Supreme Court does interpret the statute to mean that no action can be brought by a corporation or its shareholders on claims preexisting the dissolution of the corporation, more than two years after such dissolution.

■ In the Union Pack case the argument is not between shareholders or between the shareholder and the corporation. The argument also does not concern a claim which preexisted the dissolution of the corporation. Frohm Holdings, Inc., dissolved and transferred its assets in kind to the shareholders and the shares owned by those shareholders were canceled. The assets still exist and they are owned by the Bank as trustee. The statute does not apply to the Omaha National Bank as trustee.

The next argument that the trustee makes is that because there is no assignment of the mortgage on record at the time the involuntary petition was filed, the interest of the trustee takes priority over the unrecorded interest of the Omaha National Bank. For authority the trustee refers the Court to Nebraska Statute § 76–238. It states:

"All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the Register of Deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deed, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded; provided, that such deeds, mortgages and other instruments shall be valid between the parties."

The trustee admits that there is an instrument of record entitled "mortgage". However, there is nothing in the record title to indicate that the Omaha National Bank as trustee has any interest in the mortgage. Therefore, argues the trustee, since there is no assignment of the mortgage from the original mortgagee to the Omaha National Bank as trustee, such unrecorded assignment and the interest it represents are void as to the bankruptcy trustee. It then follows, according to the bankruptcy trustee, that the instrument on record is unenforceable.

■ With or without the assignment of the mortgage, the Omaha National Bank as trustee and as assignee of the promissory note has the right to enforce the mortgage securing the note. See *Whipple v. Fowler*, 41 Neb. 675, 689, 60 N.W. 15 (1894). (The assignment of a note secured by a mortgage is an assignment of the mortgage). *New England Trust Co. v. Robinson*, 56 Neb. 50, 53, 76 N.W. 415 (1898). (A mortgage of real estate is regarded as a mere incident of the debt which, by the legal transfer of the debt, passes with it to the assignee).

In this case the evidence is clear that the promissory note and mortgage, assets of Frohm Holdings, Inc., were distributed to the Omaha National Bank as trustee. Therefore, the Omaha National Bank as trustee is the holder of the mortgage.

The bankruptcy trustee has actual knowledge that there is an encumbrance of record. Just because he thinks the encumbrance cannot be enforced, does not give him the right to disregard it and does not place him in a priority position ahead of one who is the true holder of the encumbrance. *Mulligan v. Snavely*, 117 Neb. 765, 771, 223 N.W. 8 (1929). In the *Mulligan* case there was a release of a mortgage on record, but the release appeared to be defective. The Nebraska Supreme Court said that the purpose of the record, so far as third persons

are concerned, is to give notice to those who are interested that there is possibly an encumbrance or conveyance in the chain of title that should be investigated.

In this case the trustee as a bona fide purchaser takes subject to the record. Even if he believes the mortgage and the debt are extinct because either there is no corporate capacity to enforce the mortgage or because there is no assignment of record naming the Omaha National Bank as the holder of the mortgage, the bankruptcy trustee has actual knowledge of a possible encumbrance and, therefore, does not take free of the encumbrance. Once he has notice of the record he can and must look at the actual recorded instrument. In this case he would look at the mortgage which would tell him that the Union Packing Company of Omaha was originally the mortgagee and that its name was to be changed to Frohm Holdings, Inc. He then could check the corporate records with the Secretary of State of Nebraska and find that Frohm Holdings, Inc., was dissolved on a certain date. He could also check the corporate records of the Secretary of State of Nebraska and find that the assets of Frohm Holdings, Inc., were distributed to the Omaha National Bank as trustee for the shareholders. He, therefore, cannot be an innocent purchaser and it does take subject to the encumbrance. The trustee disputes the validity of the old cases and claims that the "new statute" supersedes such cases. However, § 76–238 has been the law of Nebraska since at least 1866 and the cases referred to are subsequent to the initial enactment and are subsequent to most of the amendments to the statute.

### B. Fixtures

■ This Court has found that the Omaha National Bank as trustee has a valid real estate mortgage. That mortgage also grants the mortgagee an interest in the buildings, improvements, fixtures, appurtenances, apparatus and equipment. It, therefore, has a validly perfected interest in the fixtures.

### C. Equipment

The parties agree that the original financing statement filed in 1977 lapsed pursuant to Nebraska law in 1982. No amendment and no continuation statement were filed.

Therefore, the Omaha National Bank as trustee can only claim a perfected security interest in the equipment if the financing statement which was filed with the County Clerk in January of 1984 complies with all of the statutory requirements. That financing statement lists the debtor as Union Packing Company of Omaha and the secured party as Frohm Holdings, Inc. The trustee points out that Frohm Holdings, Inc., did not exist in January of 1984 and had not existed since May of 1981. Once again, the trustee argues that Nebraska R.R.S. 21–20,104 gives a dissolved corporation the power to act to enforce a claim which existed prior to its dissolution, but only gives such corporation two years from the date of its dissolution to do so. May 15, 1983, was the expiration date of the two-year grace period.

The Omaha National Bank as trustee argues that even if Frohm Holdings, Inc., had no power to file the financing statement late, the trustee still takes notice of the record and the record reflects a financing statement indicating that some creditor (Frohm Holdings, Inc., or some other successor to its interest) has a perfected security interest in the equipment of the debtor. The Omaha National Bank as trustee claims that the purpose of the Uniform Commercial Code filing requirements is to give potential lien creditors notice that some entity claims an interest in the personal property of the debtor. Once the potential lien creditor is provided the notice of the claim, such lien creditor can easily find out who holds the security interest and, therefore, the bankruptcy trustee takes subject to that security interest and cannot avoid that security interest pursuant to its avoiding powers under 11 U.S.C. § 544.

■ The Omaha National Bank as trustee is correct that the financing statement

filing requirement is intended to give notice to potential lien creditors. However, the notice that it is intended to give is not only that there is someone claiming a security interest in the property, but that the entity claiming such security interest has, by the appropriate filing, perfected its interest.

 The entity which filed the financing statement in January of 1984 had no power to file such a financing statement, did not exist, and cannot, by putting a financing statement of record bootstrap another entity into the position of holding a perfected security interest. The proper party to file the financing statement in 1984 or any time after May 15, 1983, was the Omaha National Bank as trustee. It held the security interest in the equipment. It did not file a financing statement and, therefore, its interest is not properly perfected under the Uniform Commercial Code § 9–402. In January, 1984, Frohm Holdings, Inc., was not the secured party.

Nebraska Uniform Commercial Code § 9–302(2), 9–403 and 9–405 provide a scheme whereby a secured party may perfect a security interest in equipment, continue that interest after five years, and assign that interest. There was no continuation statement filed and there was no assignment of the interest of the secured party. The security interest, therefore, lapsed and a nonexistent entity may not recreate the perfected security interest. The January, 1984, financing statement filing is analogous to a stranger to the chain of title of real property recording a stray deed or mortgage. Even though the stranger may claim some interest in the property and may create confusion with regard to the title, such filing does not perfect such a claim.

The trustee may avoid the claim of the Omaha National Bank as trustee with regard to the security interest in the equipment.

### Conclusion

The Omaha National Bank as trustee is hereby granted relief from the automatic stay to foreclose upon the real estate mortgage and fixtures. It is denied relief concerning its claim to a security interest in the equipment.